Michael E. HOLDER, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 94–CV–1383.

District of Columbia Court of Appeals.

Argued Oct. 16, 1996.
Decided Aug. 21, 1997.

Victor E. Long, with whom Cheryl Stein, Washington, DC, was on the brief, for appellant.

Donna M. Murasky, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before WAGNER, Chief Judge, and STEADMAN and KING, Associate Judges.

STEADMAN, Associate Judge:

This case arises from the shooting of appellant Michael Holder by an off-duty police officer. Holder brought suit against the appellee District of Columbia, and the case

went to the jury on two theories of liability: negligence and assault and battery. Following a partial jury verdict in favor of the District on the negligence claim, the trial court entered judgment as a matter of law for the District on the assault and battery claim. Based on the unique instructions given in this case we affirm.[1]

## I.

Holder was shot by off-duty Metropolitan Police Department Officer Johnny Ben Walker, Jr., on August 18, 1991, around closing time outside the East Side Club in Southwest Washington. The shooting took place almost immediately after someone shot another East Side patron named Nate Bush in the crowded street outside the club. Just how Holder was shot was the subject of two distinct and competing accounts presented to the jury at trial.

Officer Walker's version, corroborated in part by other police officers on the scene, was that shortly after the Bush shooting, he heard someone shout "Walker, there he goes." Walker looked and saw Holder carrying a gun and running toward the rear of the club. When Walker identified himself as a police officer and ordered Holder to stop and drop his gun, Holder turned and pointed his gun at Walker.[2] Walker fired his gun two to three times, and Holder turned and fled down an empty street carrying the gun. Walker pursued Holder and fired his gun eleven additional times, this time hitting Holder in the back. Holder stumbled into the rear door on the driver's side of a car and the car drove away.

Holder's version, corroborated in part by friends who were with him that evening, was that following the Bush shooting he fled along with others in the crowd toward the

rear of the club. He did not have a gun, did not hear Officer Walker's order to stop, and was running down the street with a crowd of other people when he was shot in the back. He was helped by a friend into the front passenger seat of a car and driven to the hospital.

It was Holder's position at trial that the District was liable for either negligence or assault and battery. Holder argued that the District was liable for negligence because he did not have a gun on the night of the shooting and Walker had shot the wrong person. He also argued, alternatively, that even if he did have a gun, the District was liable for assault and battery because Officer Walker used excessive force in apprehending him.

Midway through the plaintiff's case at trial, the District offered to stipulate that if the jury concluded that Holder did not have a gun, the District was liable for Holder's damages. After an extensive colloquy, the trial court and Holder's counsel agreed to this stipulation. The stipulation obviated the need for Holder to call an expert witness on the standard of care, but necessitated the drafting of a special instruction on negligence as the standard instructions were no longer applicable.

As it turned out, the instructions on liability actually given to the jury, which were without objection and after much debate and compromise between counsel, were as follows (we have added paragraph numbers for ease of reference):

(1) Now, there are 2 counts that you will be considering in this case. They are distinct and they are very clear and separate. I will just give you the instructions on each count.

1. Holder also contends that the trial court erred by admitting evidence that he had $1300 in his pocket on the night of the shooting. This evidence was admitted only after Holder's counsel elicited testimony from a police evidence technician that there was no mention of money in his report and testimony from Holder that he had only fifty to sixty dollars that night. The evidence was admitted for the limited purpose of impeaching Holder's testimony, and the court instructed the jury to that effect. We review the trial court's decision to admit impeachment evi-

dence for abuse of discretion. *Byers v. United States,* 649 A.2d 279, 285 (D.C.1994). Here Holder opened the door in his own examinations, the evidence was admitted for a limited purpose, and an appropriate limiting instruction was given. Under the circumstances we find no abuse of discretion.

2. Another officer testified that Holder fired the gun at Walker when he turned.

(2) One is called the negligence count and the other is the assault and battery count. Those are the 2 claims or theories of liability on which the Plaintiff will ask you to make a decision.

(3) On the negligence count, the following instruction applies.

(4) If you find that the Plaintiff was not the gunman that Officer Walker intended to shoot, then in the circumstances of this case, you must find the defendant District of Columbia liable.

(5) If on the other hand, you find that Officer Walker intended to and did shoot the Plaintiff, that at the time of the shooting the Officer reasonably believed the Plaintiff was fleeing the commission of a felony, that the use of deadly force was necessary to prevent the escape, and that the Officer had probable cause to believe that the suspect posed a significant threat of death or physical injury to the Officer or others, then in that circumstance of this case, you must find for the defendant, the District of Columbia.

(6) You are instructed that a police officer is required by law to attempt to arrest a person when the Officer believes that that person has committed a crime in his presence.

(7) If an Officer fails to try to arrest such an individual, then the officer is guilty of a misdemeanor and can be punished by being sentenced to prison for up to 2 years.

(8) You are instructed that the force with which an Officer of the law may use to arrest a person and to maintain the person so arrested is that force which is reasonably necessary.

(9) You are further instructed that the law in this city is that a person being arrested cannot resist the Officer either [sic] when there is no sufficient legal justification for the arrest.

(10) However, an Officer is not allowed to use any force beyond that reasonably necessary to accomplish his lawful purpose.

(11) Therefore, if you find that the defendant used greater force than was reasonably necessary in the circumstances of this case, you must find the defendant is liable for any injuries or damage suffered by the Plaintiff as a result thereof. The defendant there is acting through Officer Walker.

(12) On the assault count, the following applies.

(13) An assault is an intentional and unlawful threat or attempt either by word or acts to physically harm the victim. It must appear to the victim that the person making the threat or attempt has the present ability to carry it out.

(14) Also, there must be a display of force causing the victim to fear immediate bodily harm. But, actual contact is not necessary.

(15) The threat does not have to be directed at the victim. An assault occurs if a threat is directed at a third person and as a consequence, the victim is put in fear of bodily harm.

(16) Now, battery is an intentional and unlawful harmful or offensive touching or use of force upon the physical person of another.

(17) Touching includes intentionally putting into motion any object which touches another person or which touches something that is connected with or in contact with another person.

(18) A touching is harmful if it causes physical pain and injury or illness. A touching is offensive if it offends a person's reasonable sense of personal dignity. That's assault and battery which really go together.

(19) A battery can occur even though the person committing it did not intend to touch the victim. It is sufficient if the touching is aimed at or directed at another person and as a consequence, the victim was touched.

The jury returned a verdict for the District on the negligence count, but deadlocked on the assault and battery count. Following the jury verdict the District moved for judgment as a matter of law asserting that the jury verdict for the District on the negligence count necessarily meant the District was not liable on the assault and battery count be-

cause the excessive force instruction was actually given as part of the negligence instruction. The trial court granted the motion because the negligence instruction, "perhaps inadvertently, encompassed both Plaintiff's negligence and intentional tort theories," and "when the jury indicated that it found in favor of Defendant on the negligence count, it necessarily rejected the contentions that the officer negligently shot the wrong man, or that the officer intentionally used excessive force." This appeal followed.

## II.

When an individual is shot by a District of Columbia police officer, and he or his successors in interest decide to bring a lawsuit, they may proceed under one or more different common law theories of legal liability. For example, they may sue for the common law intentional torts of assault and battery. *See Etheredge v. District of Columbia,* 635 A.2d 908, 916 (D.C.1993); *District of Columbia v. White,* 442 A.2d 159, 162–64 (D.C. 1982); *District of Columbia v. Downs,* 357 A.2d 857, 859–60 (D.C.1976). Suit may also be predicated upon one or more theories of negligence, including the officer's negligent act of shooting the victim. *See District of Columbia v. Evans,* 644 A.2d 1008, 1019–21 (D.C.1994); *Etheredge, supra,* 635 A.2d at 918; *White, supra,* 442 A.2d at 162–64; *District of Columbia v. Davis,* 386 A.2d 1195, 1198 (D.C.1978); *Downs, supra,* 357 A.2d at 859–60. Each of these theories of liability has distinct elements of proof, defenses, and rules on vicarious liability, but bear substantial similarities at the same time.

■ Although assault and battery are technically distinct intentional torts, *see* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS §§ 9–10 (5th ed.1984), in cases like this one they are often pled in conjunction as a single count. An assault is "an intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff." *Etheredge, supra,* 635 A.2d at 916. "A battery is an intentional act that causes a harmful or offensive bodily

contact." *Id.* In most cases involving intentional shootings by police officers the technical requirements of assault and battery are satisfied and the outcome of the case turns on the defense of privilege.

A police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not "in excess of those which the actor reasonably believes to be necessary." Moreover, any person, including an officer, is justified in using reasonable force to repel an actual assault, or if he reasonably believes he is in danger of bodily harm. Use of "deadly force," however, is lawful only if the user actually and reasonably believes, at the time such force is used, that he or she (or a third person) is in imminent peril of death or serious bodily harm.

*Id.* (citations omitted). The District is liable for an assault and battery committed by a D.C. police officer under the doctrine of *respondeat superior* if the officer was acting within the scope of his employment. *White, supra,* 442 A.2d at 162 n. 7; *Davis, supra,* 386 A.2d at 1202.

■ In order to prevail in a negligence action, the plaintiff must prove "the applicable standard of care, a deviation from that standard of care by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Etheredge, supra,* 635 A.2d at 917. Because the applicable standard of care in cases of this kind is beyond the ken of the average lay juror expert testimony is required. *Id.* at 917. Plaintiffs may also proceed under a negligence *per se* theory, such as when the officer's conduct violates D.C.Code § 4–176 (1994).[3] *White, supra,* 442 A.2d at 163–64. Where the shooting takes place in the District of Columbia, the affirmative defenses of assumption of the risk and contributory negligence are not available. *District of Columbia v. Coleman,* 667 A.2d 811, 815–16 (D.C. 1995); *District of Columbia v. Peters,* 527 A.2d 1269, 1274 (D.C.1987). The District is vicariously liable for the negligent acts of its

---

3. D.C.Code § 4–176 (1994) provides:
   Any officer using unnecessary and wanton severity in arresting or imprisoning any person shall be deemed guilty of assault and battery, and, upon conviction, punished therefor.

officers acting within the scope of their employment under *respondeat superior. White, supra,* 442 A.2d at 162 n. 7; *Davis, supra,* 386 A.2d at 1202.

Although we have at times remarked on the similarities and differences of these causes of action, we have never precisely delineated them from one another. For example, we have repeatedly held that a jury finding of no assault and battery does not as a matter of law preclude a finding of negligence. *Evans, supra,* 644 A.2d at 1020; *White, supra,* 442 A.2d at 162–63; *Downs, supra,* 357 A.2d at 860. We have also indicated that where there is sufficient evidence to submit to a jury the question of assault and battery, there may be, on the facts of a particular case, sufficient evidence to submit the question of negligence as well. *Etheredge, supra,* 635 A.2d at 918. That we have previously remarked upon the similarities of these causes of action is unsurprising because they all fundamentally involve an inquiry into the reasonableness of the police officer's actions. For assault and battery the inquiry is whether the officer's conduct was reasonably necessary and thereby privileged; and for negligence the inquiry is whether the officer's conduct violated the standard of care of a reasonably prudent police officer.

In another recognition of the similarities of these causes of action, we have often adverted to the prohibition on the use of "excessive force." We have used the term in a variety of contexts. At times we have indicated that "excessive force" is what is proscribed by D.C.Code § 4–176 (1994).[4] *See Coleman, supra,* 667 A.2d at 817; *Peters, supra,* 527 A.2d at 1274; *White, supra,* 442 A.2d at 163–64. At other times we appear to have equated "excessive force" with negligence. *See Evans, supra,* 644 A.2d at 1023; *Peters, supra,* 527 A.2d at 1271–72; *White, supra,* 442 A.2d at 161; *Downs, supra,* 357 A.2d at 858. At least once we appear to have used "excessive force" in reference to both assault and battery and negligence. *See Etheredge,* 635 A.2d at 916–18. Most recently we stated that "excessive force" "is a term of art denoting an act of assault or battery by law enforcement officials committed in the course of

their duties." *District of Columbia v. Tinker,* 691 A.2d 57, 64 (D.C.1997). The trial court and parties in this case used "excessive force" interchangeably with assault and battery.

### III.

With this background of the perhaps somewhat confusing and overlapping legal principles relating to police use of force, we turn to the instructions given in this case. Here only two legal causes of action went to the jury: negligence and assault and battery. As noted above, Holder argued that specific factual scenarios supported liability under each theory. It was Holder's position that the District was liable in negligence if Holder was unarmed when Officer Walker shot him. It was Holder's alternate position that the District was liable for assault and battery if Holder was in fact armed, but Officer Walker used excessive force in shooting him.

On the negligence count, the parties elected not to give the standard instructions because of the stipulation that the District was liable if Holder was not armed. Instead, the trial court and the parties drafted paragraph 4 which simply stated that "[i]f you find that the Plaintiff was not the gunman that Officer Walker intended to shoot, then in the circumstances of this case, you must find the defendant District of Columbia liable."

The parties also agreed to give paragraph 5 as part of the negligence instructions. It provided that

[i]f on the other hand, you find that Officer Walker intended to and did shoot the Plaintiff, that at the time of the shooting the Officer reasonably believed the Plaintiff was fleeing the commission of a felony, that the use of deadly force was necessary to prevent the escape, and that the Officer had probable cause to believe that the suspect posed a significant threat of death or physical injury to the Officer or others, then in that circumstance of this case, you must find for the defendant, the District of Columbia.

4.  *See* note 3 *supra.*

Paragraph 5 is an adaptation of the language of *Tennessee v. Garner*, 471 U.S. 1, 12, 105 S.Ct. 1694, 1701–02, 85 L.Ed.2d 1 (1985) which sets forth the constitutional limitation on the use of force by police in attempting to seize a fleeing felon, that is to say, the circumstances under which, as a constitutional matter, an officer may use deadly force.[5] The inclusion of paragraph 5 in the negligence instructions may be somewhat puzzling, because, at the same time, the parties and the trial court apparently equated the "excessive force" instruction of paragraph 5 with the assault and battery count. Nevertheless, the trial court indicated that both paragraphs 4 and 5 were to replace the standard negligence instructions, and both paragraphs 4 and 5 were in fact given as a part, but only a part, of the negligence instructions.

On their face, however, these two paragraphs together could not constitute the totality of instructions on a negligence theory. Paragraph 4 states one circumstance under which the District must be held liable; namely, if the jury finds that Holder was not the gunman that Officer Walker intended to shoot. It does not state the contrary (as was apparently intended in light of the special stipulation here); namely, that unless the jury finds that Holder was not the gunman, the jury must find for the District on the negligence count. Instead, the next instruction given, paragraph 5, is simply a detailed special set of circumstances which, if met, required a verdict for the District. But again, the court does not state that this is the only circumstance under which the District will not be liable, nor does it say that if the conditions of paragraph 5 are not met, then a verdict must be entered for the plaintiff. In other words, after paragraphs 4 and 5, the jury understandably would be waiting for further instructions on the issue of liability.

We now turn to the assault and battery count. The parties agreed to give paragraphs 13–19, which were taken almost verbatim from Standardized Civil Jury Instructions for the District of Columbia No. 19–2 to 19–4 (1981),[6] the basic liability instructions on assault and battery which say nothing about the qualified privilege of police officers. The parties also agreed to give paragraphs 6–11, but it is not entirely clear whether these instructions were intended to apply to the negligence count or the assault and battery count or both. Discussion on these instructions immediately followed a discussion on the standard assault and battery instructions, but the parties specifically requested that the instructions be given following paragraphs 4 and 5. Paragraphs 6 and 7 were apparently designed to convey the essence of D.C.Code § 4–142 (1994),[7] dealing with a police officer's

---

5. In addition to common law theories of liability, a individual shot by a police officer may bring suit under the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1996), for deprivation of the Fourth Amendment right to be free from unreasonable seizures. *See Tennessee v. Garner, supra,* 471 U.S. at 5–7, 105 S.Ct. at 1698–99; *Evans, supra,* 644 A.2d at 1010.

6. Standardized Civil Jury Instructions for the District of Columbia No. 19–2 to 19–4 (1981) provide:

An assault is an intentional and unlawful threat or attempt, either by words or by acts, to physically harm the victim. It must appear to the victim that the person making the threat or attempt has the present ability to carry it out. Also, there must be a display of force, causing the victim to fear immediate bodily harm; but actual contact is not necessary.

The threat does not have to be directed at the victim; an assault occurs if a threat is directed at a third person, and as a consequence, the victim is put in fear of bodily harm.

A battery is an intentional and unlawful, harmful or offensive, touching or use of force upon the physical person of another. "Touching" includes intentionally putting into motion any object which touches another person, or which touches something that is connected with, or in contact with another person. A touching is harmful if it causes physical pain, injury or illness; and touching is offensive if it offends a person's reasonable sense of personal dignity.

A battery can occur even though the person committing it did not intend to touch the victim; it is sufficient if the touching is aimed at or directed at another person and as a consequence, the victim is touched.

7. D.C.Code § 4–142 (1994) provides in relevant part:

If any member of the police force shall neglect making any arrest for an offense against the laws of the United States committed in his presence, he shall be deemed guilty of a misdemeanor and shall be punishable by imprison-

duty to attempt to arrest an apparent law breaker. Paragraphs 8–11 are taken almost verbatim from Standardized Civil Jury Instructions for the District of Columbia No. 18–5 (1981),[8] dealing with the excessive use of force by a police officer in making an arrest, applicable to a civil false arrest action. The last sentence of paragraph 11 reflects a stipulation that the District was liable under *respondeat superior.*

Whatever the intent of the parties, these instructions were in fact given as part of the negligence instructions, and the jury could reasonably have taken them in that way. As we have discussed, the concept of lack of excessive force as a defense to assault and battery is easily seen as an aspect of negligence through the use of excessive force. And in deciding that issue, it is useful to know the duties imposed upon a police officer with respect to the arrest of a malefactor.

The bottom line is that under the negligence instruction, encompassing by the very form and structure of the instructions as given the totality of paragraphs 4 through 11,[9] the jury was clearly given two circumstances under which it must find the District liable: first, if the plaintiff was not the gunman that Officer Walker intended to shoot (paragraph 4), and second, if the officer used greater force than was reasonably necessary in the circumstances of this case (paragraph 11). That completely covered plaintiff's two theories of liability. When the jury found the District not liable on the "negligence count," it necessarily rejected both theories of liability, as the trial court correctly ruled. The confusion of the jury, if any, must have been how to deal with the assault and battery count on the instructions as given, after it

had already found for the District on the negligence count.

We have often said that juries are presumed to have followed instructions. *See, e.g., Harris v. United States,* 602 A.2d 154, 165 (D.C.1992) (en banc). There is no reason to think they did not do so here on the negligence count. Holder argues that the jury's verdict on negligence may have been based on paragraph 4 alone. We see no reasonable basis for such an assumption. First of all, as already noted, the overall structure of the instructions can only be viewed as encompassing all of paragraphs 4 through 11 under the negligence instruction. Furthermore, paragraph 5 itself begins, "On the other hand," indicating that the instruction on negligence continues beyond paragraph 4.

It is also argued that the jury note and reinstruction require us to conclude that only paragraph 4 applied to negligence. The jury note read

"Re ¶ 1—Negligence Count

Does the word "gunman" in this context mean that we find that Holder *was* the gunman or that Walker perceived that Holder was the gunman?

It is asserted that the caption of the note indicates that the jury understood the controlling negligence instruction to be the single sentence of paragraph 4. We think that the caption is at best ambiguous. It could just as easily mean that the question refers to the first paragraph of the multi-paragraph negligence count. Second, it is argued that the court's answer to the note which clarified that the term "gunman" meant "armed" leaves "no doubt" that the negligence instruction encompassed paragraph 4 alone.

---

ment in the District Jail or Penitentiary not exceeding 2 years, or by a fine not exceeding $500.

**8.** Standardized Civil Jury Instructions for the District of Columbia No. 18–5 (1981) provides: You are instructed that the force which an officer of the law may use to arrest a person and to maintain the person so arrested is that force which is reasonably necessary. You are further advised that it is the law in this city that a person being arrested may not resist an officer, even when there is no sufficient legal justification for the arrest. However, an offi-

cer is not allowed to use any force beyond that reasonably necessary to accomplish his lawful purpose. Therefore, if you find that the defendant used greater force than was reasonably necessary in the circumstances of this case, you must find that the defendant is liable for any injuries and damage suffered by the plaintiff as a result thereof.

**9.** The trial court in paragraph 3 said "On the negligence count, the following instruction applies." Then in paragraph 12, it said: "On the assault count, the *following* applies."

We fail to see why this is the case. The ambiguity in paragraph 4 about which the jury inquired is apparent from the wording of that paragraph as given and the court simply clarified that ambiguity.[10] Finally, it is argued that paragraph 4 was the only negligence instruction because the jury sent a second note "[r]egarding the assault & battery count." This proves too much. The question the jury raised regarding the assault and battery claim did not concern paragraph 5, but paragraph 15, which, if anything, tends to show that the jury recognized that the assault and battery count did not include the paragraphs under the preceding negligence instructions.

These instructions were worked out in extended conferences among the parties and the trial court. They were given without objection or suggestion for clarification or amendment. The blame for any confusion can be laid at plaintiff's feet as justifiably as at any other locale. On appeal, that complaint comes too late. In any event, we see no reason to think that the jury did not follow the instructions as given in arriving at their verdict on the negligence count. Accordingly, we agree with the trial court that on the unique instructions given here, the jury in finding no negligence necessarily found that Officer Walker did not use excessive force, and that, accordingly, the District is entitled to judgment as a matter of law on the assault and battery count.

*Affirmed.*

WAGNER, Chief Judge, dissenting:

In my view, the record does not support the trial court's conclusion, adopted by the majority, that the jury's verdict for the District on the negligence count means necessarily that the jury rejected Holder's excessive force theory of liability. Based on the parties' stipulation and under the trial court's instructions to the jury, a verdict for the

District on Holder's sole theory of negligence required the jury to find only that Holder was not an unarmed, unintended victim of the shooting. Thus, in returning a verdict for the District on the negligence count, it was unnecessary for the jury to reach Holder's alternative assault and battery theory of liability on which the jury deadlocked. To the extent that there was confusion in the instructions which may have misled the jury by conveying the impression that the jury was to consider the excessive force instructions in connection with Holder's negligence claim, in spite of the expressed intentions and extensive efforts of the parties and the trial court to formulate instructions delineating the excessive force theory separately as a part of the assault and battery claim, the trial was unfair. Therefore, to prevent manifest injustice, a new trial should be ordered on the assault and battery count on which the jury reported that it could not reach a verdict. *See Bell v. Westinghouse Elec. Corp.*, 483 A.2d 324, 327 (D.C.1984).

### I.

It is clear from the record that appellant Holder proceeded on alternative theories of liability. The first was based upon negligence for which the District of Columbia (District) stipulated liability if the jury found only that Holder had no gun at the time that the police officer shot him.[1] Holder's theory was that negligence was established if it was shown that he was an unarmed bystander whom the officer shot. Since the government conceded this point, the trial court, with the consent of the parties, dispensed with the customary negligence instructions. The parties agreed that the court should instruct the jury that "[i]f you find that the Plaintiff was not the gunman that Officer Walker intended to shoot, then in the circumstances of this case, you must find the defendant District of Columbia liable."[2] The

---

10. That the court itself thought that paragraph 4 was not alone the negligence instruction is plain from the instruction conference, where it stated "negligence is out and these two [paragraphs 4 and 5] would go in place of negligence."

1. The District represented that the reason that they had no expert testimony on the duty of care

was because they had conceded that the officer was negligent if he shot someone other than the person whom he intended to hit, *i.e.*, specifically the person with the gun.

2. The language in the instruction mirrors the only negligence instruction developed by the

court and the parties stated explicitly, more than once, that this instruction was sufficient to allow the jury to determine the liability question under Holder's negligence theory, given the District's stipulation. Indeed, the District suggested that the trial court give the converse of this proposition, which the District's counsel formulated as "[i]f you find that Officer Walker intended to shoot the Plaintiff [Holder], then you must find against the Plaintiff [Holder] ...."; however, apparently by oversight, the converse was not given.[3]

Holder's second theory of liability was assault and battery premised upon the officer's use of excessive force under a formulation set forth in *Tennessee v. Garner*, 471 U.S. 1, 11–12, 105 S.Ct. 1694, 1701–02, 85 L.Ed.2d 1 (1985).[4] *See District of Columbia v. Tinker*, 691 A.2d 57, 64 (D.C.1997) (" 'Excessive' force is a term of art denoting an act of assault or battery by law enforcement officials committed in the course of their duties.") The factual predicate for this theory was that the officer shot Holder in the back as he fled. Although it was clearly intended by the court and the parties that only these two theories of liability be submitted to the jury, the majority holds that the instruction as given failed to accomplish the intended purpose. While acknowledging

much confusion in the instructions, the majority must conclude that the jury understood them to mean that there were two theories of negligence in addition to the assault and battery claim. For only then can the conclusion be reached that the jury's verdict in favor of the District on the negligence count under the parties' stipulation (shooting of an unarmed bystander) also covered Holder's assault and battery (excessive force) claim.[5] My review of the record and considerations of fairness lead me to conclude otherwise.

Although the record is itself somewhat confusing, as I read it, the trial court proposed the language from *Garner* to cover Holder's second theory of liability, assault and battery (excessive force). The equivalent language is found in the trial court's instruction to the jury, which it acknowledged was "literally out of the [*Garner*] case."[6] The court and counsel agreed that this *Garner* language should be given after the brief special negligence instruction which was developed in light of the District's stipulation. Since the trial court had decided to submit to the jury the excessive force issue and "whether or not [the officer] was justified to shoot a fleeing felon," the District requested an instruction that "a police officer is required to make an arrest when there is a

court and counsel for purposes of closing instructions.

3. Holder's counsel did not object to the District's proposal for the converse proposition; however, she turned immediately to a portion of the discussion to which she did take exception. There was no further mention of the District's suggestion, and the trial court did not provide the instruction which may have eliminated some of the speculation about the meaning the instructions conveyed.

4. In *Garner*, the Supreme Court held unconstitutional a Tennessee statute insofar as it authorized the use of deadly force to prevent the escape of a nondangerous fleeing suspect. 471 U.S. at 11, 105 S.Ct. at 1701. Pertinent to the trial court's formulation of the jury instruction in this case, in finding that the statute was not unconstitutional on its face, the Supreme Court stated:

Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the

suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.
*Id.* at 11–12, 105 S.Ct. at 1701.

5. As the majority points out, "the trial court and the parties used 'excessive force' interchangeably with assault and battery." Maj. op. at 742.

6. That part of the instruction reads:

If on the other hand, you find that Officer Walker intended to and did shoot the Plaintiff [Holder], that at the time of the shooting the Officer reasonably believed the Plaintiff was fleeing the commission of a felony, that the use of deadly force was necessary to prevent the escape, and that the Officer had probable cause to believe that the suspect posed a significant threat of death or physical injury to the Officer or others, then in the circumstance of this case, you must find for the defendant, the District of Columbia.

crime committed in his presence based on the D.C.Code and various regulations."[7] The parties also agreed upon portions of standard jury instruction, No. 18–5, involving the use of force in making an arrest and prohibiting resistance.[8] As a result of further discussions preliminary to instruction, it was resolved that the court would also give standard instructions on assault and battery and transferred intent in connection with the excessive force claim. As agreed by the parties, these instructions followed the *Garner* language.

The first liability instruction, set forth in the first paragraph, requires only that the jury determine whether Holder was or was not the gunman in order to resolve whether the District was negligent. The jury was instructed not to proceed further if it found for Holder on this first liability question. The jury sent a note which obviously addressed the single sentence instructing the jury on Holder's negligence theory. The note read as follows:

Re: ¶ 1—Negligence Count

Does the word gunman in this context mean that we find that Holder was the gunman or that Walker perceived that Holder was the gunman?

It appears from this note that the jury understood the controlling negligence instruction to be the single sentence as the court and the parties intended. The jury indicated by their caption that the negligence count was covered in paragraph one about which they were inquiring. Moreover, in response, the court reinstructed the jury on the negligence theory as follows:

So, you could rephrase the first paragraph as if you find that the Plaintiff [Holder] did not have a gun when Officer Walker shot

him, then in the circumstances of this case, you must find that the District—that the defendant District of Columbia is liable.

The court then repeated the instruction:

If the Plaintiff did not have a gun, if that's what you find, that the Plaintiff did not have a gun when Officer Walker shot him, then you must find the District of Columbia.... You must find the District of Columbia liable.

Given the instructions and reinstructions, there can be little doubt that the jury was informed that its consideration of the negligence count was at an end once it determined whether Holder had a gun when the officer shot him. Since we presume, at least where the instructions are clear, that the jury follows the instructions,[9] their verdict necessarily should reflect the answer to the single question dispositive of the negligence claim.[10]

The connective phrase, "[i]f on the other hand," which precedes the *Garner* formulation, although possibly misleading, does not alter that substantively two separate theories were presented for the jury's consideration and that one of them commenced in paragraph two of the instruction. In spite of this connecting phrase, the first two paragraphs of the instructions are not converse propositions, as the majority suggests, insofar as the grounds for liability are stated.[11] The first paragraph, which the jury could have perceived properly as the negligence instruction, requires only a finding that Holder was not the gunman in order to find in his favor. The second paragraph requires for a verdict in favor of the District, a finding that the officer reasonably believed that Holder was a fleeing felon, that the use of deadly force was necessary to prevent his escape, and that Holder posed a significant threat of death or

---

7. It was the District's position, however, that as a matter of law the officer could shoot Holder justifiably under the circumstances.

8. *See* STANDARDIZED JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 18–5.

9. *See Harris v. United States*, 602 A.2d 154, 165 (D.C.1992)(en banc)(citing *Clark v. United States*, 593 A.2d 186, 193 (D.C.1991)).

10. During discussions concerning the jury note, the trial court recognized the limited requirement for a finding on the negligence theory,

stating, "if [Holder] was unarmed, the District has given you that case."

11. The converse proposition for the first paragraph would have been along the lines the District suggested as follows:

If on the other hand, you find that the Plaintiff *was* the gunman that Officer Walker intended to shoot, then in the circumstances of this case, you must find the District of Columbia *not* liable.

physical injury to the officer or others. This was the *Garner* theory for recovery for the use of excessive force. The succeeding paragraphs in the instructions may be viewed to explicate the initial excessive force paragraph by outlining the officer's arrest responsibilities, the prohibition against a citizen's resistance, and the amount of force which may be used. Looking at the instructions as a whole, as we are required to do, without singling out separate phrases, it is reasonable to say that the jury was instructed to consider the negligence theory under paragraph one and the *Garner* theory under the remaining paragraphs. *See Minor v. United States,* 647 A.2d 770, 773 (D.C.1994); *Powell v. United States,* 485 A.2d 596, 601 (D.C. 1984).

The jury's subsequent note evidences that they understood their obligation under the instructions to consider separately an assault and battery claim based on excessive force. After their initial note concerning paragraph one, the negligence count, they sent another note "[r]egarding the assault & battery charge." [12]

The jury sent a note on March 16, 1994, indicating that they had reached a verdict on the negligence count, but that they were deadlocked on the assault and battery count. The court took their partial verdict finding for the District on the negligence count. It also gave an *Allen* charge.[13] Jury deliberations resumed the next day, and the jury sent a note in the morning seeking clarification about the elements of damages. Later that afternoon, the jury reported that it was still deadlocked on the assault and battery count, and the trial court declared a mistrial.

## II.

While jurors are presumed to follow the court's instructions, such an assumption can-

not be made fairly with respect to confusing instructions. Here, much confusion surrounds whether the *Garner* language in the second paragraph was intended to embody the concept of excessive force as a part of the negligence claim. Only the majority's careful legal analysis of the relationship or similarities which can exist between excessive force claims as elements of negligence or of assault and battery leads it to determine that the verdict on the negligence count also covered the assault and battery claim.[14] The jury did not have the benefit of the careful delineation of the two causes of action which the majority makes here. The efficacy the presumption that jurors follow the instructions dissipates where the instructions are phrased in terms which the jurors are not likely to understand. *See Thompson v. United States,* 546 A.2d 414, 426 (D.C.1988). I am not persuaded, as my colleagues are, that the total responsibility for the confusion in the instructions should be upon Holder. The record reflects that the parties and the court made genuine efforts to put forth instructions which would allow the jury to consider the negligence count based upon the parties' stipulation and the assault and battery claim based on excessive force. In spite of their intentions, only in hindsight does it appear that they may have not achieved that objective.

## III.

For the foregoing reasons, in my opinion, Holder is entitled to have a jury decide the unresolved count at a new trial. We have held in a slightly different context, "[w]here several theories of liability, one of which is impermissible, and the court 'cannot determine on which theory of liability the jury relied when finding in favor of the [party], leaving open the possibility that it may have relied on the impermissible one, the case

---

12. The note inquired whether transferred intent was to be considered in connection with the assault theory. The trial court instructed that transferred intent related to both assault and to battery. The court also reminded the jury that these instructions "should be considered by [the jury] along with all of the other instructions in the case and applied to the facts as you find them."

13. *See* Standardized Civil Jury Instructions for the District of Columbia, No. 1–11 (approved in *Winters v. United States,* 317 A.2d 530, 534 (D.C. 1974)).

14. *See Etheredge v. District of Columbia,* 635 A.2d 908, 918 (D.C.1993)(Claims of negligence and assault and battery are related in some factual contexts.)

must be remanded for retrial.'" *District of Columbia v. White,* 442 A.2d 159, 165 (D.C. 1982) (quoting *Murphy v. United States,* 209 U.S.App. D.C. 382, 653 F.2d 637, 646 (1981)(other citations omitted)). Here, the jury specified its finding in favor of the District on the negligence count, and the record indicates that the trial court, counsel for the parties and the jury all understood the basis upon which that theory was submitted. The District should not be permitted to contend now that because the jury instructions might have been interpreted another way, it is entitled to a verdict as a matter of law. The injustice of the position seems patent. Therefore, the jury's verdict should be given effect, or at the very least, a new trial should be granted to prevent injustice. *See Bell, supra,* 483 A.2d at 327. For these reasons, I respectfully dissent from the opinion of the court.