Ed KOTSCH, Appellant,

v.

**DISTRICT OF COLUMBIA,**
et al., Appellees.

No. 02–CV–1447.

District of Columbia Court of Appeals.

Argued June 21, 2004.

Decided May 24, 2007.

Jerry Ray Smith, with whom Ian A. Williams and Kyle A. McGonigal were on the brief, for appellant.

James C. McKay, Jr., Senior Assistant Attorney General, Appellate Division, with whom Arabella W. Teal, Interim Attorney General at the time the brief was filed, and Charles L. Reischel, Deputy Attorney General, Appellate Division, at the time the brief was filed, were on the brief, for appellees.

Before FARRELL and RUIZ, Associate Judges, and TERRY, Senior Judge.*

* Judge Terry was an Associate Judge of the court at the time this case was argued. His status changed to Senior Judge on February 1, 2006.

RUIZ, Associate Judge:

This litigation stems from the arrest of appellant by officers of the Metropolitan Police Department at a McDonald's restaurant. When criminal charges were dismissed for lack of evidence, appellant filed a civil action against the District of Columbia and the officers alleging that they had violated his civil rights under 42 U.S.C. § 1983 and committed various torts including assault and battery; intentional infliction of emotional distress; false arrest/false imprisonment, and negligence.[1] He also claimed that the District of Columbia negligently hired, trained, and supervised the officers and was also liable on the theory of negligence *per se*. The trial court granted summary judgment for the defendants on all claims. After considering the record and arguments on appeal, we reverse and remand the case for further proceedings as to the assault and battery and excessive force claims, and affirm the trial court's dismissal of all the other claims.

## I.

## BACKGROUND

Appellant and the two police officers who arrested him presented the trial court with very different accounts of the relevant events. Because we are reviewing the grant of summary judgment in favor of the appellees, "we first view the evidence in a light most favorable to the party opposing the motion (the appellant)." *See Truitt v. Miller*, 407 A.2d 1073, 1077 (D.C. 1979) (citing *Yasuna v. Miller*, 399 A.2d 68, 71 (D.C.1979) and *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C.1977)).

### A. Appellant's Account

On September 23, 2000, at about 2:30 a.m., appellant entered a McDonald's restaurant on "I" Street, S.E. Officers James Fields and Kenneth Boone, in full uniform, were sitting inside the restaurant while working as private security officers for the McDonald's franchise restaurant owner. According to appellant, he tossed some napkins on the lid of a trash receptacle, where used trays are placed, while walking towards the line to order food. The officers approached appellant and instructed him to place the napkins inside the trash bin. Appellant asked if he could first place his order, but the officers refused his request. As appellant was placing the napkins in the trash, one napkin fell on the ground.

Appellant asserts that Officer Fields came toward him with his nightstick drawn and ordered appellant to pick up the napkin and put it in the trash can. Appellant complied with the officer's request, complaining that "I'm not your bitch, but I'll pick it up," and walked back to the line to place his order. The officers then ordered appellant to leave, telling him to "get the hell out of here." In response, appellant asked to speak with the manager. After refusing his request, Officer Fields, with assistance from Officer Boone, grabbed appellant and dragged him out of the restaurant while striking him several times with the nightstick. Appellant was taken into custody, spent a night in jail, and was charged with unlawful entry. As a result of his encounter with the officers, appellant claimed, he sustained multiple physical injuries including a bloodied and swollen lip and injuries to his eye and arms.[2]

---

1. The law suit also included McDonald's and the franchise owner of the restaurant. McDonald's was voluntarily dismissed as a defendant by appellant. After summary judgment was granted to the franchise owner, according to appellant the parties settled the dispute.

2. According to the District's Statement of Material Facts As to Which There is No Genuine Dispute, filed in support of its motion for summary judgment pursuant to Superior Court Civil Rule 12–I, appellant did not seek medical or psychological assistance following his encounter with the police.

As mentioned, the unlawful entry charge against appellant was subsequently dismissed by the United States Attorney's Office for lack of evidence.

Appellant's friend, Lonnie Fisher, witnessed the incident and substantially corroborated appellant's version of the events. Mr. Fisher stated that he saw the officers push appellant to the ground and that he "saw the tall officer's fist raised at least two times and come down on [appellant's brow]." He added that when the officers pushed appellant to the ground, they were not attempting to place him under arrest. Rather, Mr. Fisher testified, he saw two "blows" to appellant's face and "at least two more times [he saw the] tall officer's hand raise and come down ... as the scuffle was moving to the ground." According to Mr. Fisher, appellant offered no resistance, but he conceded that once appellant was on the ground, Fisher could not see what appellant was doing.

## B. Appellees' Account

The officers' version of the events is significantly different. In his deposition, Officer Boone stated that he observed appellant walk into the restaurant and throw several pieces of paper over his shoulder onto the floor. At that time, Officers Fields and Boone approached appellant and asked him to pick up the papers he had thrown on the floor. Appellant did not respond. Officer Fields then asked appellant to pick up the papers "a few more times," but appellant still did not respond or comply. Eventually, appellant turned around and told Officer Fields "[o]kay, but I'm not going to be your bitch." Officer Boone testified that, as appellant picked up the trash, Officer Fields advised him that profanity was prohibited in a family restaurant, and he was going to have to leave after he threw away the papers. Appellant refused, saying that he was not going anywhere, and that he intended to place his food order. Officer

Fields advised him that he would have to leave without ordering his food. According to Officer Boone, appellant then became loud and started using profanity. Again, Officer Fields asked appellant to leave and advised him that if he refused, he would be placed under arrest. Upon hearing this, appellant said that he would not leave until he could speak with a manager and order his food. When Officer Fields tried to arrest him, appellant resisted. In Officer Boone's words, appellant "pushed off of Officer Fields. He didn't actually push him with a lot of power. He pushed Officer Fields. He then fell to the ground and started kicking, hollering, screaming." Officer Fields told appellant several times that he was being placed under arrest and that he should stop resisting. Appellant, however, continued to resist arrest. Officer Boone attempted to restrain appellant by grabbing his arm, but was unable to do so. Appellant "managed to kick his way basically out of the establishment and into the like doorway area, and he couldn't go any further." It was then that Officer Fields detained him, placed him in handcuffs, and called for a transport vehicle. Officer Boone testified that he did not notice any injuries to appellant after he was arrested.

In his deposition, Officer Fields stated that after he placed appellant under arrest "[h]e started resisting, pushing off, kicking—kicking me about the leg area, at which time I tried to grab control, get a hold of him. He fell to the ground in the store. He got up, tried to run to the door. I grabbed him again. He fell right by the counter. Then I got control of him, picked him up, took him to the west side doors. It's like a foyer. You go out one door, you turn and there's another door. I got him in the foyer area, put him up against the wall, placed handcuffs on him, called for a transport." Officer Fields denied hitting appellant in the face.

Officer Fields also testified that the day after he arrested appellant, he received a phone call from precinct Sergeant Regina Funk to inquire about "a guy in the station ... [who] looks like somebody beat the hell out of him." In response to Sergeant Funk's questioning, Officer Fields responded: "Yeah. I lo[c]ked a guy up [last night], didn't touch him though." According to Officer Fields, "she seemed pretty worried about it," especially the injuries to his face. However, Officer Fields told her "to calm down" and that he was not going to "get upset about all that." He told her to pull up appellant's picture taken at the station the night before "and see if you see any bruise, anything."

## C. Motion for Summary Judgment

In their motion for summary judgment, the District of Columbia and the officers argued that (1) the officers had probable cause to arrest plaintiff for unlawful entry, as well as a reasonable, good-faith belief that he had committed the offense; (2) under the circumstances, the amount of force used in effecting appellant's arrest was not excessive as a matter of law; (3) there was no evidence of "extreme and outrageous" conduct on the part of the officers to support a claim of intentional infliction of emotional distress; and (4) there was insufficient evidence, without expert testimony, to support a common-law claim of negligent hiring, supervision, and training of police officers, nor was there evidence of a policy or custom of the District resulting in violations of constitutional rights to support a claim against the District under 42 U.S.C. § 1983.

The trial court granted summary judgment on all claims ruling that, as to appellant's claims of assault, battery, intentional infliction of emotional distress, negligence, negligence *per se*, and violation of 42

U.S.C. § 1983, appellant's failure to submit expert testimony "is fatal to his claims in this case" because the applicable standard of care "in cases of this kind is 'beyond the ken of the average lay juror,' and expert testimony is therefore required." As to appellant's claim of false arrest and imprisonment, the trial court found that this case "cannot meaningfully be distinguished from *Bauldock v. Davco Food, Inc.*, 622 A.2d 28, 32 (D.C.1993), wherein our Court of Appeals held that an off-duty police officer, acting as a security guard for a restaurant, had probable cause to arrest a customer for unlawful entry after refusing to comply with the officer's order to leave, and therefore a civil action for false arrest could not lie." Therefore the trial court granted appellees' motion for summary judgment on these claims as well. Appellant challenges the trial court's dismissal of his claims for assault and battery, intentional infliction of emotional distress, constitutional violation under § 1983, and false arrest and imprisonment.[3]

## II.

## ANALYSIS

### A. Standard of Review

■ We review the grant of a motion for summary judgment *de novo*. *See Woodland v. Dist. Council 20*, 777 A.2d 795, 798 (D.C.2001). In reviewing a trial court order granting summary judgment, we conduct an independent review of the record, and apply the same standard as the trial court in considering the motion for summary judgment. *See Critchell v. Critchell*, 746 A.2d 282, 284 (D.C.2000) (citing *Sherman v. District of Columbia*, 653 A.2d 866, 869 (D.C.1995)). A motion for summary judgment should be granted if the court concludes that there is no genuine issue as to any material fact and that

---

**3.** Appellant does not challenge the grant of summary judgment for the District on his

claim of negligent hiring, supervision and training, and negligence *per se*.

the moving party is entitled to judgment as a matter of law. *See Woodland,* 777 A.2d at 798 (citing *Musa v. Cont'l. Ins. Co.,* 644 A.2d 999, 1001–02 (D.C.1994) and Super. Ct. Civ. R. 56(c)). Though we view the evidence in the light most favorable to the non-moving party, *see Bailey v. District of Columbia,* 668 A.2d 817, 819 (D.C. 1995), mere conclusory allegations by the non-moving party are legally insufficient to avoid the entry of summary judgment. *See Musa,* 644 A.2d at 1002. Thus, a party opposing a motion for summary judgment must produce at least enough evidence to make out a prima facie case in support of his claim. *See Nader v. de Toledano,* 408 A.2d 31, 48–49 (D.C.1979).

## B. False Arrest and Imprisonment

■ Appellant contends that the trial court erred in granting appellees' motion for summary judgment as to his claim of false arrest and imprisonment based on the reasoning that the officers had probable cause to arrest appellant as a result of his refusal to leave the restaurant when ordered to do so by Officer Fields. Under D.C.Code § 22–3302 (2001),[4] "one who lawfully enters a building may be guilty of a misdemeanor by refusing to leave after being ordered to do so by [a] person lawfully in charge of the premises." *Bauldock,* 622 A.2d at 32. We agree with the trial court's decision to grant summary judgment because the undisputed facts support probable cause to arrest appellant for unlawful entry, as well as a reasonable good-faith belief that appellant had committed that offense. Appellant does not

dispute that the officers ordered him to leave the restaurant, or that the officers were authorized by the franchise owner, Frank Taylor, to remove appellant from the premises. Nor does appellant dispute that he did not leave when he was ordered to do so by the officers. Based on the undisputed facts of record, the officers had probable cause to arrest appellant for unlawful entry. Appellees were therefore entitled to judgment as a matter of law on the claim of false arrest and imprisonment. *See Bauldock,* 622 A.2d at 32; *Scott v. District of Columbia,* 493 A.2d 319, 321 (D.C.1985).

## C. Intentional Infliction of Emotional Distress

■ Appellant also argues that the trial court erred in granting appellees' motion for summary judgment on the intentional infliction of emotional distress claim by imposing an expert witness requirement. He asserts that his claim of intentional infliction of emotional distress creates a question for the jury given that the record supports appellant's assertion that the officers' conduct was extreme and outrageous under the circumstances. The tort of intentional infliction of emotional distress consists of (1) "extreme and outrageous" conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff "severe emotional distress." *See Waldon v. Covington,* 415 A.2d 1070, 1076 (D.C.1980); RESTATEMENT (SECOND) OF TORTS § 46 (1965). As to the first element, "[l]iability has been found only where the conduct has been so outra-

---

4. D.C.Code § 22–3302 provides:

   Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building, or other property, or part of such dwelling, building, or other property, against the will of the lawful occupant or of ·the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $100 or imprisonment in the Jail for not more than 6 months, or both, in the discretion of the court.

geous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." RESTATEMENT § 46, cmt. d. It is possible to infer the existence of the second element of the tort—intent or recklessness—from the very outrageousness of a defendant's conduct. *See Waldon,* 415 A.2d at 1077. Finally, the defendant's actions must proximately cause the plaintiff emotional distress "of so acute a nature that harmful physical consequences might be not unlikely to result." *Clark v. Associated Retail Credit Men of Wash. D.C.,* 70 App. D.C. 183, 186, 105 F.2d 62, 65 (1939). As the officers had probable cause to arrest appellant, the arrest itself cannot form the basis for a claim of extreme or outrageous conduct. As noted, appellant did not seek medical assistance for physical or psychological injury. Therefore, even if we consider the manner in which the arrest was made, viewing the evidence most favorably to appellant, *see Bailey,* 668 A.2d at 819, we agree with the trial court that, without an expert, the record does not provide evidence from which a reasonable jury could find that Officers Fields' and Boone's conduct was so "extreme and outrageous"[5] that it caused severe emotional distress to appellant.

## D. Section 1983 Claim Against the District

■■■■ We also reject appellant's contention that the trial court erred in granting the District's motion for summary judgment on his Section 1983 claim. In order to maintain such a claim against the District, appellant must present evidence of an official "custom" or "policy" of the District of Columbia which led to appellant's constitutional violation. *See District*

*of Columbia v. Evans,* 644 A.2d 1008, 1018 (D.C.1994) (citing *City of Okla. City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). Appellant asserts that Officers Fields and Boone "had been the subject of multiple police brutality suits," and that by not taking action to investigate or curtail them, the District had a *de facto* policy of permitting their abusive behavior. This, according to appellant, provides "more than sufficient evidence to present a jury question on this issue."

The District argues that under *Young v. District of Columbia,* 752 A.2d 138, 146 (D.C.2000), evidence that Officers Fields and Boone had previously been accused of civil rights violations is insufficient to show "the pervasive policy which [appellant] attempts to show." *Id.* In support of its argument, the government cites to *Fulwood v. Porter,* 639 A.2d 594 (D.C.1994), where this court held that "lists of judgments won and suits pending against the District fall well short of creating a triable issue on … liability." *Id.* at 601. Although the evidence presented in this case (unlike in *Fulwood* ) was specific to the named officers involved in this litigation, a review of the record shows that the evidence presented to the trial court consisted of only the case names and numbers of two civil actions involving Officer Fields and the case name and number of a civil action involving Officer Boone that were "based on their conduct as police officers." The record does not provide any further information regarding those cases, and we do not know, for example, the circumstances of the litigation, the specific allegations made against each officer, or the outcome of any of the three cases cited by appellant. As a result, even assuming that a § 1983 claim against the District could

---

**5.** The "extreme and outrageous" standard for intentional infliction of emotional distress is different from, and more exacting than, the "reasonableness" standard used for evaluating claims of excessive force, discussed *infra.*

prevail by proving a "pervasive policy" based on neglectful oversight of the officers' reported excesses, the evidence presented to the trial court was plainly insufficient to create a triable issue for the jury.[6]

### E. Assault and Battery and Fourth Amendment Claim of Excessive Force

■ We reach a different conclusion with respect to appellant's claim for assault and battery and the related claim of excessive force under the Fourth Amendment. In granting the motion for summary judgment, the trial court relied on *Holder v. District of Columbia*, 700 A.2d 738 (D.C.1997), and *Etheredge v. District of Columbia*, 635 A.2d 908 (D.C.1993), for the proposition that expert testimony is required to prevail on claims of assault and battery against police officers. Appellant correctly points out—and the District concedes—that neither *Holder* nor *Etheredge* stand for said proposition, and as a result, the trial court committed legal error in imposing such a requirement.

On appeal, the District contends that we should affirm the trial court's ruling on a different ground: that Officers Fields and Boone used a reasonable amount of force to effect an arrest supported by probable cause and that such force was not excessive as a matter of law. According to the District, under the circumstances of this case, appellant's claims of assault, battery and Fourth Amendment claim of excessive force state "an identical claim," because a police officer who is justified in arresting an individual has both a qualified immunity and a qualified privilege that entitles the officer to use an amount of force reason-

ably necessary to effect the arrest. The District asserts that the qualified privilege that protects the officers from the common law claim of assault and battery is similar to the qualified immunity that shields them from the constitutional claim of excessive force. *See Etheredge*, 635 A.2d at 916 (citing *Jackson v. District of Columbia*, 412 A.2d 948, 956 (D.C.1980)). In addition, the District contends that in both types of cases it is the claimant's burden—except when deadly force is used—to prove that the amount of force that the officer used in effecting the arrest was unreasonable. *See Edwards v. City of Philadelphia*, 860 F.2d 568, 572 (3rd Cir.1988); *Wing v. Britton*, 748 F.2d 494, 497 (8th Cir.1984).[7]

■ It is well established that a police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not "in excess of those which the actor reasonably believes to be necessary." *See Etheredge*, 635 A.2d at 916 (quoting *Jackson*, 412 A.2d at 956 (citation omitted)). "Moreover, any person, including an officer, is justified in using reasonable force to repel an actual assault, or if he reasonably believes he is in danger of bodily harm." *Id.* (internal quotation marks and citation omitted). "[T]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). In the context of a motion for summary judgment, we have observed that:

A motion for summary judgment on the issue of the defendant's qualified immu-

---

6. Appellant does not claim that summary judgment was premature or that he did not have an opportunity to conduct discovery to make out a *prima facie* case under Section 1983.

7. Thus, this case does not require us to explore the closely related—but theoretically different—underpinnings between the defense of qualified privilege against common law tort claims and qualified immunity from constitutional claims.

nity ... must be denied where, viewing the facts in the record and all reasonable inferences derived therefrom in a light most favorable to the plaintiff, a reasonable jury could conclude that the unlawfulness of the defendant's actions was so "apparent" that *no reasonable officer could have believed in the lawfulness of his actions* (citations omitted).

*Fulwood,* 639 A.2d at 598 (quoting *Martin v. Malhoyt,* 265 U.S.App. D.C. 89, 105–106, 830 F.2d 237, 253–54 (1987) (quoting *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987))) (emphasis added). We therefore concluded that the "converse must equally be true: *unless* a reasonable jury could conclude that the unlawfulness is 'apparent' to the degree indicated, summary judgment must be granted." *Id.*

We further explained that:

The answer to the question whether the trial court or a jury ultimately decides the issue of qualified immunity is suggested by the Supreme Court's allusion in *Mitchell* [*v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)], to the situation where a trial judge denies a motion to dismiss or for summary judgment after concluding that, "if the facts are as asserted by the plaintiff, the defendant is not immune." That is, disputed factual issues relevant to the immunity issue are, as in any other case, submitted to the trier of fact, but the "purely legal question on which [the] claim of immunity turns," remains for the court to decide.

*Id.* at 599 n. 8 (internal citations omitted).

In *District of Columbia v. Chinn,* 839 A.2d 701, 706 (D.C.2003), we stated that a trial court should deny summary judgment and submit the question of assault and battery to the jury if a reasonable jury could conclude that excessive force was used. The issue "involve[s] an inquiry into the reasonableness of the police officer's actions. For assault and battery the inquiry is whether the officer's conduct was reasonably necessary and thereby privileged." *Id.* at 706 (quoting *Holder,* 700 A.2d at 742). We noted that "[w]e specifically left open the question of who bears the burden on the privilege issue in *District of Columbia v. Jackson,* 810 A.2d 388, 395 n. 15 (D.C.2002). Where an arrest is lawful and the only issue is the use of excessive force, many states have placed that burden on the plaintiff." *Chinn,* 839 A.2d at 706 n. 3 (citing 1 DOBBS, LAW OF TORTS § 87 (2001)).

Against this legal framework appellant contends that "there is more than enough" evidence to create a jury question on the issue of excessive force, pointing to his deposition testimony that the officers "charged and hit" him and "dragged" him out of the McDonald's after they had "knocked" him to the ground, and that he was never told that he was under arrest until Officer Fields handcuffed him outside the restaurant.

The District counters that the actions taken by the officers—even if assumed to be as appellant alleges—cannot be viewed in a vacuum, but must be considered in the context of the fact that appellant did not allow himself to be arrested, but physically struggled with Officer Fields to avoid arrest. Because there is no good faith right in the District of Columbia to resist an arrest, *see* D.C.Code § 22–405(a),[8] the gov-

---

8. D.C.Code § 22–405(a) provides that: Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with any officer or member of any police force operating in the District of Columbia, including any designated civilian employee of the Metropolitan Police Department, any campus or university special police officer, or any officer or member of any fire department operating in

ernment contends, Officers Fields and Boone had both a qualified immunity and a qualified privilege that entitled them to use an amount of force reasonably sufficient to overcome appellant's efforts to resist arrest.

The District relies on three decisions of the D.C. Circuit Court suggesting that the force used by Officers Fields and Boone was not excessive as a matter of law. In *Martin*, 265 U.S.App. D.C. at 114, 830 F.2d at 262, the D.C. Circuit concluded that it could not characterize the manner in which the officer arrested Martin as objectively unreasonable "in light of the rapidly unfolding sequence of events" where the arresting officer grabbed Martin, threw him back into the driver's seat and closed the car door on his leg because Martin had previously driven away from the officer, as if to flee the scene, and after being stopped, had opened his door into traffic and started to get out of the vehicle. Appellees also cite to *Scott v. District of Columbia*, 322 U.S.App. D.C. 75, 86, 101 F.3d 748, 759 (1996), where the court held that, viewing the confrontation "from the perspective of the police officer on the scene in a quickly developing situation," the officers did not use excessive force by striking Scott (an off-duty police officer arrested for drunk driving) once, and then knocking him to the ground where they rolled him over and pinned him with their knees so that he could be handcuffed. *Id.* (internal quotation marks and citation omitted). The court concluded that "the

degree of force used to arrest Scott was not so excessive that no reasonable officer could have believed in the lawfulness of his actions," especially given that appellant had previously tried to escape from the police vehicle where he was detained. *Id.* at 86, 101 F.3d at 759. Finally, the government cites to *Wardlaw v. Pickett*, 303 U.S.App. D.C. 130, 133 n. 2, 137, 1 F.3d 1297, 1300 n. 2, 1304 (1993), where the court held that a marshal, who was in the process of removing a demonstrator from the courthouse, did not use excessive force when he punched a friend of the demonstrator once in the jaw and two or three times in the chest after the friend had "crash[ed] through the doors" and down the stairs, raising fears he was about to attack the marshal. The court concluded that no jury could find the marshal's use of force was so excessive that no reasonable officer could have believed it to be lawful, under the circumstances. *See id.* at 137, 1 F.3d at 1304.

The government's reliance on these cases is misplaced in the context of this record, viewed in the light most favorable to appellant. Unlike *Martin* and *Scott*, where the court reasoned that the police officers did not use excessive force because they were acting to prevent a person from fleeing in situations where the person had previously attempted to get away, in this case both appellant and Lonnie Fisher testified that appellant did not resist arrest or try to escape. And unlike in *Wardlaw*, where the court concluded

the District of Columbia; or any officer or employee of any penal or correctional institution of the District of Columbia, or any officer or employee of the government of the District of Columbia charged with the supervision of juveniles being confined pursuant to law in any facility of the District of Columbia, whether such institution or facility is located within the District of Columbia or elsewhere, or any inspector, investigator, emergency medical technician, or paramedic employed by the government of

the District of Columbia, while engaged in or on account of the performance of his or her official duties, shall be fined not more than $5,000 or imprisoned not more than 5 years, or both. It is neither justifiable nor excusable cause for a person to use force to resist an arrest when such arrest is made by an individual he or she has reason to believe is a law enforcement officer, whether or not such arrest is lawful.

D.C.Code § 22–405(a).

that the marshal's use of force was not excessive because the marshal reasonably could fear that he was going to be attacked, appellant's and Fisher's testimony that appellant did not strike at the officers—if believed by the jury—could dispel any possibility that the officers acted to protect themselves or to control appellant's aggression.

Furthermore, although we agree that an evaluation of the reasonableness of the officers' use of force must take into account whether appellant resisted arrest, we disagree with the government's argument that the officers' use of force in this case was not excessive as a matter of law because they used the force necessary to effect an arrest for which they had probable cause. First, whether appellant resisted arrest—and if so, to what degree—was in contention and an issue of material fact.[9] Moreover, appellant testified that the officers "charged" at him and hit him with a baton and with their hands. Appellant suffered injuries that prompted Officer Fields's supervisor to call and question him about the incident. And although the officers had probable cause to arrest appellant for unlawful entry, the jury could consider that the offense he allegedly committed—the charges, as noted, were dropped—did not warrant the use of such force as would cause the injuries appellant suffered. Thus, we conclude that the trial court erred in granting the government's motion for summary judgment as to appellant's claim of assault and battery and excessive force because, viewing the record in the light most favorable to appellant, a jury could conclude that "the unlawfulness of the [officers'] actions was so apparent that no reasonable officer could have believed in the lawfulness of his action." *Fulwood*, 639 A.2d at 598 (internal quotation marks and citations omitted). We therefore reverse the trial court's grant of summary judgment on the assault and battery and excessive force claims and remand the case for further proceedings with respect to those claims. In all other respects, the trial court's grant of summary judgment is affirmed.

*So ordered.*

---

9. Appellant testified that the officers never told him that he was under arrest and was "almost positive that [he] allowed [the officers] to handcuff [him]." This testimony was corroborated by Mr. Fisher, who stated in his deposition that he did not see any signs of resistance by appellant. The officers, on the other hand, said appellant kicked and resisted arrest. Whether appellant resisted arrest, and the degree of resistance, if any, are questions for the jury. Notably, the government's assertion that appellant resisted arrest was not included in the Statement of Material Facts As To Which There Is No Genuine Dispute filed in support of its motion for summary judgment.