**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

LOUIS AGRONT, SR.,
*Defendant-Appellant*.

No. 13-10218

D.C. No.
5:11-cr-00945-RMW-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Argued and Submitted
March 11, 2014—San Francisco, California
Submission vacated March 19, 2014
Resubmitted August 6, 2014

Filed November 21, 2014

Before: Sidney R. Thomas, Raymond C. Fisher
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Fisher

# SUMMARY[*]

### Criminal Law

The panel affirmed a misdemeanor conviction for violating a Department of Veterans Affairs regulation prohibiting disorderly conduct that creates loud, boisterous, and unusual noise.

The panel held that the regulation, reasonably interpreted, includes a controlling standard of conduct:  it prohibits the creation of loud, boisterous, and unusual noise that would tend to disturb the normal operation of a VA facility. Applying that interpretation, the panel held that the regulation is not unconstitutionally vague as applied to the defendant, and that sufficient evidence supported his conviction.

### COUNSEL

Steven G. Kalar, Federal Public Defender, Heather M. Angove (argued) and Cynthia C. Lie, Assistant Federal Public Defenders, Federal Public Defender's Office, San Jose, California, for Defendant-Appellant.

Melinda Haag, United States Attorney, Barbara J. Valliere, Chief, Appellate Division, and Anne M. Voigts (argued), Assistant United States Attorney, Office of the United States Attorney, San Francisco, California, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**OPINION**

FISHER, Circuit Judge

We consider whether a Department of Veterans Affairs (VA) regulation prohibiting disorderly conduct that creates loud, boisterous, and unusual noise, *see* 38 C.F.R. § 1.218(a)(5) and (b)(11), is unconstitutionally vague as applied to the defendant, Louis Agront, Sr. The regulation, reasonably interpreted, includes a controlling standard of conduct: it prohibits the creation of "loud, boisterous, and unusual noise" that would tend to disturb the normal operation of a VA facility. Applying that interpretation, we hold that the regulation is not vague as applied to the defendant and that sufficient evidence supported his conviction. We therefore affirm.

**I**

In September 2011, Agront visited the emergency room at the Veterans Affairs hospital in Palo Alto, California. His adult son and two adult daughters had brought him to the hospital during the late afternoon because they were concerned about recent changes in his behavior, although they had not told him that was the reason. Instead, Agront believed his visit was to treat knee and foot pain he had been experiencing. When he did not receive the treatment he expected, Agront left the VA hospital and began walking home. His children went after him around an hour later and, to induce him to return to the hospital and have bloodwork done, falsely told Agront that his normal podiatrist would treat him if he returned.

Upon arriving back at the hospital that evening, Agront was initially seen by VA nurse Laura Rutherford. Agront's children told her outside his hearing that, although he believed he was being treated for knee pain and significant weight loss, they were concerned about his increasingly erratic behavior. She observed that Agront was alert and oriented, able to maintain linear thoughts and converse appropriately, but also that he kept pacing, had pressured and quick speech, did not want to sit and generally seemed to not want to remain at the hospital. She stood outside the door while he was attended by a doctor and testified that he became agitated and "stormed off."

Agront then spoke to VA social worker Susan Harrison in the hospital lobby. Because he believed he had been treated poorly, he was very upset and wanted to leave. She observed that his body language was tense, his face was red and his speech was pressured and rapid; he also seemed angry and fidgety to her, and would start to become loud but then reduce his volume. After he "stormed out" of the lobby, his daughters stayed to speak with her while his son followed him.

Agront and his son began yelling at each other in the parking lot loudly enough to be heard in the hospital lobby 25 yards away. Concerned the situation might escalate into physical violence and hoping to deescalate the situation, Harrison asked Rutherford to call the VA police, then left with Agront's daughters to monitor the situation. After Rutherford called the police, she too left to monitor the situation in the parking lot.

When the first VA police officer to respond arrived at the scene, around 9:00 p.m., he could not discern exactly what

was being said, but he could hear yelling from his car 15 yards away with the windows rolled up, the doors closed and the engine running. The officer later learned Agront had been trying to leave the premises, whereas his son was trying to prevent him from doing so and to persuade him to come back to the hospital for treatment. Agront and his son were pushing and shoving each other, but they did not exchange blows. One of Agront's daughters was standing between them, trying to separate them. This behavior continued even after the officer pulled up in his marked police car with lights flashing.

The officer announced his presence and told everyone to step back. Everyone except Agront did so. Agront instead turned toward the officer, took what the officer perceived as a partial potential combat stance and refused to comply with the officer's orders. When the officer told Agront several times to sit on the curb, he continuously refused to do so. At some point, Agront explained he had an injured back. The officer then helped Agront sit down, although there is evidence Agront may have resisted. The timing and duration of these events are not evident in the record.

What happened next is not clear because the magistrate judge, concluding it was not relevant to the charged offense, sustained the defendant's objection to further testimony about the incident. What is undisputed is that the officer eventually arrested Agront, but not his son. According to the officer, Agront continued to yell at his son even as he was being handcuffed. The officer testified he arrested Agront because Agront had maintained his position blocking access to the

parking lot,[1] refused to comply with the verbal commands of a uniformed police officer, took a combative position, actively resisted the orders of other police officers who had later arrived on the scene, continued to yell loudly and tried to reengage in an argument with his son.  After the arrest, a treating psychiatrist examined Agront at the officer's request to determine whether he was a danger to himself or anyone else; evidently the psychiatrist concluded he did not pose such a danger because Agront was discharged.  The officer finished collecting witness statements around 2:00 a.m.

In December 2011, Agront was charged in a criminal information with "engag[ing] in disorderly conduct which created a loud, boisterous, and unusual noise, while on property under the charge and control" of the VA, a Class B misdemeanor, in violation of 38 C.F.R. § 1.218(b)(11).[2]  He

---

[1] The officer did not observe any vehicles that were being blocked from entering the parking lot, although he may not have seen any that were because he was focused on the incident.

[2] This regulation provides, in full:

> Disorderly conduct which creates loud, boisterous, and unusual noise, or which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tends to impede or prevent the normal operation of a service or operation of the facility, $250.

38 C.F.R. § 1.218(b)(11).  Technically, subsection (b)(11) provides only a penalty; the substantive offense conduct is defined as:

> Disturbances.  Conduct on property which creates loud or unusual noise; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which

was tried before a magistrate judge and convicted. Agront moved to dismiss the information, arguing that, as applied to his conduct, § 1.218(b)(11) is void for vagueness in violation of the Due Process Clause of the Fifth Amendment. The magistrate judge denied his motion and sentenced him to six months of probation, a $50 fine and a $10 special assessment. Agront appealed to the district court, which affirmed his conviction. He timely appealed to this court.

## II

We review de novo whether a regulation is void for vagueness and whether sufficient evidence supported a conviction. *See United States v. White Eagle*, 721 F.3d 1108, 1113 (9th Cir. 2013); *United States v. Elias*, 269 F.3d 1003, 1014 (9th Cir. 2001).

### A. Vagueness

A criminal statute or regulation is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it

---

> otherwise impedes or disrupts the performance of official duties by Government employees; which prevents one from obtaining medical or other services provided on the property in a timely manner; or the use of loud, abusive, or otherwise improper language; or unwarranted loitering, sleeping, or assembly is prohibited.

*Id.* § 1.218(a)(5). Although the parties focused exclusively on subsection (b)(11), we look to the language of both subsections. *See Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (considering "what the ordinance *as a whole* prohibits" when conducting a vagueness analysis (emphasis added)).

authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2007). Because Agront has not argued that his First Amendment rights are at issue and has brought only an as-applied challenge, we "need only examine the vagueness challenge under the facts of the particular case and decide whether, under a reasonable construction of the statute, the conduct in question is prohibited." *United States v. Naghani*, 361 F.3d 1255, 1259–60 (9th Cir. 2004) (quoting *United States v. Fitzgerald*, 882 F.2d 397, 398 (9th Cir. 1989)) (internal quotation marks omitted).

Agront first argues that 38 C.F.R. § 1.218(b)(11) should be interpreted to include a "controlling standard of conduct" requiring that the "loud, boisterous, and unusual noise" prohibition extend only to conduct that would tend to disturb the normal operation of a VA facility.[3] He argues that, as applied to his conduct, the regulation is manifestly vague even under this interpretation because he was cited for violating the regulation, but no citation was given to his son or to a patient playing loud music from a radio earlier that day. This arbitrary enforcement, he contends, illustrates that the regulation is "susceptible to the precise arbitrary and discriminatory enforcement that the vagueness doctrine is intended to prohibit."

---

[3] Relying on *United States v. Richard Williams*, 892 F.2d 1044, 1990 WL 811 (6th Cir. 1990) (unpublished), Agront argued that the controlling standard of conduct should be whether the requisite noise "tend[s] to disturb the routine operations of a Veterans Administration hospital." For the reasons given below, we hold the regulation is more appropriately interpreted to prohibit noise which tends to disturb the *normal* operation of a VA *facility*.

The government disputes that any controlling standard of conduct is required when applying the regulation, arguing the regulation's language is sufficiently definite on its own terms. Further, the government argues that the decision to cite Agront but not his son or the other patient was an appropriate exercise of discretion by the police officer.

We agree with Agront that § 1.218(b)(11) – read in conjunction with § 1.218(a)(5), the substantive provision defining "disturbances" (hereafter collectively "the regulation") – includes a requirement that the "[d]isorderly conduct which creates loud, boisterous, and unusual noise" also be conduct that would tend to disturb the normal operation of a VA facility. We reject his vagueness challenge, however, because the regulation, so interpreted, is not unconstitutionally vague as applied to Agront's conduct. In so holding, we are guided by the Supreme Court opinion in *Grayned v. City of Rockford*, 408 U.S. 104 (1972), although we recognize it applied a "more stringent vagueness test," *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982), because it involved conduct protected by the First Amendment.

In *Grayned*, the Court rejected a vagueness challenge to an ordinance that prohibited making "any noise or diversion which disturbs or tends to disturb the peace or good order of" a school or class when school is in session. 408 U.S. at 107–08. The Court noted that the ordinance forbade "noisy or diversionary activity" only "at fixed times – when school is in session – and at a sufficiently fixed place – 'adjacent' to the school." *Id.* at 111 (footnote omitted). Section 1.218 also applies only in fixed locations, "property under the charge and control of VA." 38 C.F.R. § 1.218(a)–(b).

*Grayned* also noted that the ordinance was explicitly designed for the protection of schools. *See* 408 U.S. at 110. Subsections 1.218(a)(5) and (b)(11) are similarly designed, as a whole, to maintain a calm environment at VA facilities. The government permissibly "seeks to prohibit disturbances" on VA property because: "(1) the purpose of VA facilities is to serve and care for veterans, (2) many veterans have heightened sensitivities, and (3) disturbances, including loud noises, can trigger psychological reactions from the VA patient population." *United States v. Szabo*, 760 F.3d 997, 1003 (9th Cir. 2014). As the VA nurse testified in this case, it is particularly important that VA medical facilities maintain a calm environment because:

> We have a lot of people that suffer from psychiatric disorders, and that could be really disruptive having someone yelling or two people yelling, anyone yelling. It could be really harmful to the people because it could trigger – certain events cause more problems to people in the hospital, especially the Veterans Hospital, given what they've been through.

The prohibition on "[d]isorderly conduct" creating "loud, boisterous, and unusual noise" on VA property therefore serves "[t]he government's interest in caring for veteran patients and not triggering adverse psychological reactions from such patients." *Id.* at 1003 (holding that prohibiting, under § 1.218(a)(5), "a visitor from yelling obscenities and threatening physical violence is eminently reasonable" in view of this interest).

Most importantly, the Court in *Grayned* held that, "[a]lthough the prohibited quantum of disturbance is not specified in the ordinance," its purpose of protecting schools made it apparent "that the measure is whether normal school activity has been or is about to be disrupted." *Grayned*, 408 U.S. at 112. The Court observed that because the ordinance was "written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities," it "gives fair notice to those to whom [it] is directed." *Id.* (alteration in original) (quoting *Am. Commc'ns. Ass'n v. Douds*, 339 U.S. 382, 412 (1950)) (internal quotation marks and footnote omitted).

So too here. The regulation does not explicitly define a necessary quantum of "loud, boisterous, and unusual noise." But just as the "quantum of disturbance" in *Grayned* was defined by the school context, here the requisite quantum of noise is found by looking to the context in which the regulation applies: "property under the charge and control of VA" – in this case, a hospital. 38 C.F.R. § 1.218(a)–(b). As the district court correctly noted, "[a] person of common intelligence would understand that the prohibition on 'loud, boisterous, and unusual noise' is in relation to the environment of a VA facility as opposed to a baseball stadium or train station." At a VA facility, as in a school, "the prohibited disturbances are easily measured by their impact on the normal activities." *Grayned*, 408 U.S. at 112.[4]

_____

[4] As of December 31, 2013, VA facilities included 820 VA Community-Based Outpatient Clinics, 300 VA Vet Centers, 150 VA Hospitals, 131 VA National Cemeteries and 56 Veterans Benefits Administration Regional Offices. *See* Department of Veterans Affairs: VA Facilities Statistics at a Glance 2, *available at* http://www.va.gov/vetdata/docs/Quickfacts/Homepage_slideshow_3_31_14.pdf. All such facilities

The VA facility context therefore requires adopting the controlling standard of conduct for which Agront advocates: the quantum of "[d]isorderly conduct which creates loud, boisterous, and unusual noise" that is required to violate the regulation is conduct sufficiently "loud, boisterous, and unusual" that it would tend to disturb the normal operation of a VA facility.[5]

The text of the regulation itself supports this interpretation.   Notably, § 1.218(a)(5) – defining "Disturbances" – prohibits conduct "which creates loud or unusual noise," conduct that "obstructs" use of various areas of access, and also conduct "which *otherwise impedes or disrupts* the performance of official duties by Government employees" (emphasis added).  Use of the term "otherwise" indicates that, in order to be prohibited conduct, "loud and unusual noise" also would need to rise to the level of impeding or disrupting normal VA operations.  *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1598 (2002) (defining "otherwise" as "in a *different* way or manner" (emphasis added)).

---

conduct normal activities against which prohibited disturbances can be easily measured.

[5] In *Grayned*, the Court noted that it was troubled in the abstract "by the imprecision of the phrase 'tends to disturb,'" but it held that phrase was acceptable because state courts interpreted it "to prohibit only actual or imminent interference with the 'peace or good order' of the school." 408 U.S. at 111–12.  We similarly interpret conduct that "would tend to disturb the normal operation of a VA facility," to mean conduct that poses an "actual or imminent interference" with that facility's operation.

This concept is further evident in § 1.218(b), the "Schedule of offenses and penalties." The penalty provision that corresponds to § 1.218(a)(5)'s "disturbances" states:

> Disorderly conduct which creates loud, boisterous, and unusual noise, or which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tends to impede or prevent the normal operation of a service or operation of the facility, $250.

§ 1.218(b)(11). As solely a penalty provision, § 1.218(b)(11) must be read to cover the same conduct prohibited by the substantive provision. And, taken together, these provisions plainly target, and equate, only conduct serious enough to disturb the normal operation of a VA facility.

Applying this reasonable construction of the regulation, Agront's conduct was clearly prohibited. *See Naghani*, 361 F.3d at 1259–60. He and his son yelled, pushed and shoved at each other in a VA hospital parking lot, prompting a VA nurse and social worker to call the police and leave their ordinary duties to monitor the situation. The yelling could be heard from inside the hospital lobby 25 yards away and from inside a running police car with the windows up and the doors closed 15 yards away. These actions constitute "[d]isorderly conduct which creates loud, boisterous, and unusual noise" that would tend to – and, in fact, did – disturb the normal operation of a VA hospital. The regulation need not identify a specific decibel level for the level of noise that would qualify for a penalty; the normal operation of VA facilities provides an adequate measure for determining what constitutes prohibited conduct.

The regulation also does not encourage arbitrary and discriminatory enforcement. *See Williams*, 553 U.S. at 304. Agront's argument that such encouragement is manifest in the record because he was arrested and cited for violating the regulation, whereas his son and a patient playing loud music from a radio were not, fails because a regulation is unconstitutionally vague only if it is "so standardless that it authorizes or encourages *seriously discriminatory enforcement*." *Id.* (emphasis added).

Agront has not shown that citing him but not his son or the radio-playing patient was discriminatory. Rather, as the district court found, the officer permissibly exercised his discretion based on his "observations and investigation into the incident." *See Grayned*, 408 U.S. at 114 ("As always, enforcement requires the exercise of *some* degree of police judgment, but, as confined, that degree of judgment here is permissible." (emphasis added)). The district court correctly observed that the decision to cite only Agront was an exercise of discretion "not as to whether there *was* a violation but rather whether a citation was *necessary*." One may reasonably question the wisdom or necessity of the citation, and of the prosecution that followed, but Agront has not shown it was unconstitutional.[6]

---

[6] Notably, the VA in November 2010 "determined that arrest is generally not an appropriate remedy in a situation where the Department must balance the rights and needs of a disruptive patient against the need to protect other patients, guests, and staff." Responding to Disruptive Patients, 75 Fed. Reg. 69,881, 69,881 (Nov. 16, 2010) (codified at 38 C.F.R. § 17.106, now § 17.107). Instead, the agency recognized that certain patients have "a pattern of disruptive behavior," and that the better course is to understand and plan for that pattern and to set "safe conditions for care delivery," thereby "interven[ing] in ways that can prevent subsequent episodes requiring removal and arrest." *Id.*

Because the controlling standard of conduct is reasonably clear and Agront clearly violated that standard, we hold that the VA's disorderly conduct regulation is not unconstitutionally vague as applied to Agront. *See also Szabo*, 760 F.3d at 1003 (rejecting the defendant's as-applied vagueness challenge to 38 C.F.R. § 1.218(a)(5) because his actions – "threaten[ing] to harm the receptionist, his doctor, and a VA security guard using violent and profane language," as well as "yell[ing] at the top of his lungs and engag[ing] in threatening behavior" – unambiguously fell within its prohibitions "on 'loud' and 'abusive' language and on 'conduct . . . which creates loud or unusual noise'"); *United States v. Richard Williams*, 892 F.2d 1044, 1990 WL 811, at *2 (6th Cir. 1990) (unpublished) (rejecting the defendant's vagueness challenge to 38 C.F.R. § 1.218(a)(5) and (b)(11) because "the controlling standard of conduct is reasonably clear"); *United States v. Dyers*, No. 1:06-MJ 455 AJB, 2007 WL 397109, at *8–9 (N.D. Ga. Jan. 30, 2007) (rejecting the defendant's vagueness challenge to 38 C.F.R. § 1.218(a)(5) and (b)(11) because their terms "are easily and understandably defined"); *United States v. Fentress*, 241 F. Supp. 2d 526, 529 (D. Md. 2003) (rejecting the defendant's vagueness challenge to 38 C.F.R. § 1.218(b)(11) because its controlling standard of conduct is reasonably clear), *aff'd*, 69 F. App'x 643 (4th Cir. 2003) (unpublished).

## B.  Sufficiency of the Evidence

To prevail on his sufficiency of the evidence challenge, Agront must show that, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Tello*, 600 F.3d 1161, 1164 (9th Cir. 2010).  Agront argues there was

insufficient evidence adduced at trial that his conduct would tend to disturb the normal operation of the hospital.

We disagree.  The evidence not only established that his conduct *would tend* to disturb the normal operation of the hospital, but also that the hospital's operation *was actually* disturbed.  Agront has not challenged the magistrate judge's factual findings that (1) the altercation between Agront and his son could be heard inside the facility 25 yards away and (2) a VA nurse and social worker were drawn away from their ordinary tasks to monitor the situation.  These facts are sufficient to establish that the normal operation of the hospital was disturbed.  Contrary to Agront's contention, it makes no difference that these were the same employees who had attended him earlier because, during the altercation, they had been diverted from their normal duties to ensure the situation in the parking lot did not escalate.

There is no support for Agront's argument that § 1.218(b)(11) requires proof that his conduct was audible in or disruptive to the hospital's treatment areas or patient residences.  The normal operation of a VA hospital is not limited to what occurs in patient treatment areas – indeed, the regulation also forbids obstructing "the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways."   38 C.F.R.  §  1.218(b)(11); *see also id.* § 1.218(a)(5) (prohibiting "unreasonably obstruct[ing] the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots"); *cf. United States v. Roper*, 215 F. App'x 32, 34 (2d Cir. 2007) (summary order) (affirming the defendant's conviction under 38 C.F.R. § 1.218(a)(5) because the defendant "unreasonably obstructed the usual use of the hospital's lobby by creating such a commotion that people waiting in line were distracted, and

security officers were required to leave their checkpoint to deal with the situation").

Sufficient evidence therefore supported Agront's conviction.

## III

We hold that disorderly conduct creates sufficiently loud, boisterous, and unusual noise to be prohibited under § 1.218(a)(5) and (b)(11) when such conduct would tend to disturb the normal operation of a VA facility. Applying that interpretation of the regulation, we affirm Agront's conviction.

**AFFIRMED.**