# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 15, 2014        Decided January 23, 2015

No. 13-5207

WILBERT HARRIS,
APPELLANT

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00114)

*Donald M. Temple* argued the cause and filed the brief for appellant.

*R. Craig Lawrence*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Wyneva Johnson*, Assistant U.S. Attorney.

Before: ROGERS and WILKINS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: Wilbert Harris brought an action against the United States Department of Veterans Affairs ("VA") seeking damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.*, for false arrest and false imprisonment, assault and battery, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. The district court granted the VA's motion for summary judgment on all claims. For the reasons that follow, we reverse the grant of summary judgment on Harris' assault and battery claim and on his claim of intentional infliction of emotional distress to the extent that it is based on his assault and battery claim. We affirm the grant of summary judgment on all other claims.

I.

Harris is a Vietnam War veteran who suffers from post-traumatic stress disorder ("PTSD"). On November 6, 2008, two days after the election of President Obama, Harris attended a group therapy session for veterans suffering from PTSD at the VA Medical Center in Washington, D.C.[1] David Sheets, a clinical social worker, ran the session. Harris had with him a newspaper announcing President Obama's election, and he displayed it proudly at the beginning of the session.

Harris and Sheets disagree on what occurred next, but Harris does not dispute that Sheets asked him not to discuss political issues during the session and, when he refused, Sheets asked him to leave. When Harris did not, Sheets left the room and returned a few minutes later with three VA police officers,

---

[1] Harris' amended complaint states that the incident in question occurred "[o]n or about November 5, 2008," although all other record evidence, including Harris' own Statement of Material Facts in Dispute, states it occurred on November 6, 2008.

Lieutenant William N. Nesbitt, Sergeant Denise G. Gentry, and Corporal Donald R. Christmas. As Harris left the room with the officers, Sheets told the officers that Harris had caused a "disturbance." Sheets said Harris could not return to the group therapy session. According to Harris, Harris asked for a patient advocate, was "never violent [or] combative," and attempted to re-enter the therapy room to recover his personal items, whereupon he was forced to the floor by the officers, handcuffed, and placed under arrest. Harris contends that during the arrest, one of the officers punched him in the ribs, fracturing one of them.

The parties agree that two officers then took Harris to the hospital's emergency department, where he was treated for a scrape on his left hand. After he was discharged from the emergency department, Harris was placed in a holding cell and issued a citation for "[d]isorderly [c]onduct which creates loud, boisterous, unusual noise." J.A. 55; *see* 38 C.F.R. § 1.218(b)(11). The citation was later dismissed without a hearing. Harris states that he "endured multiple hospital visits related to the injuries incurred" during the arrest, which included a fractured rib and permanent nerve damage in his left arm. He also claims that the attendant mental and emotional trauma further aggravated his PTSD.

Harris' amended complaint against the VA alleged false arrest and false imprisonment, assault and battery, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress under the FTCA. *See* 28 U.S.C. § 1346(b)(1). The VA moved for dismissal, or, in the alternative, for summary judgment. *See* Fed. R. Civ. P. 12(b)(1), (b)(6), 56. Harris opposed the VA's motion, arguing that "absent discovery" the VA's motion was "premature and should be denied." Pursuant to the Rules of the District Court for the District of Columbia, Harris included a "concise

statement" of "all material facts" that he thought necessary to be litigated and "references to the parts of the record relied on to support [his] statement." Rule 7(h), Rules of the U.S. District Court for the District of Columbia. His statement included citations to affidavits and medical documents and referred to disputes over Harris' behavior during the confrontation, whether he acted aggressively toward the police or forcefully tried to re-enter the therapy room, how the police effected the arrest (specifically, whether they struck Harris once he was handcuffed), and whether Harris suffered a fractured rib and other injuries because of the arrest, among other disputes. Harris did not request discovery pursuant to Federal Rule of Civil Procedure 56(d).

The district court granted summary judgment to the VA on all claims. It concluded that "no reasonable jury could find that the arresting officers engaged in conduct amounting to false arrest and false imprisonment, assault and battery, negligence, negligent infliction of emotional distress, or intentional infliction of emotional distress." The court determined that the officers had probable cause to arrest Harris for disorderly conduct "because he attempted to re-enter the group therapy room against the officers' unequivocal directive not to do so." The court also held that the officers' use of force was reasonably necessary under the circumstances, ignoring Harris' later professions of numbness and weakness in his left hand because he had been diagnosed with carpal tunnel syndrome before his arrest. The court made no mention of Harris' alleged rib injury. Because Harris' arrest was secured with probable cause and reasonably necessary force, his claims of intentional infliction of emotional distress and negligent infliction of emotional distress also failed.

5

II.

We review a district court's decision to grant summary judgment *de novo* and consider the evidence in the light most favorable to the non-moving party. *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (per curiam). Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see* Fed. R. Civ. P. 56(a), (c). "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006) (quoting *Anderson*, 477 U.S. at 248). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 248). A party opposing summary judgment must point the district court to disputed facts "with the requisite specificity and support them with appropriate references to the record." *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). We may affirm summary judgment on any ground supported by the record. *Jones v. Bernanke*, 557 F.3d 670, 676 (D.C. Cir. 2009).

III.

Tort liability under the FTCA is determined according to the law of the place where the alleged acts or omissions occurred—in this case, the District of Columbia. *Tarpeh-Doe v. United States*, 28 F.3d 120, 123 (D.C. Cir. 1994). Applying D.C. tort law, we consider each of Harris' claims in turn.

1. False Arrest and False Imprisonment

The elements of the torts of false arrest and false imprisonment are: (1) detention or restraint against one's will within boundaries fixed by the defendant, and (2) the unlawfulness of such restraint. *Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31, 44 (D.D.C. 2007).[2]  The existence of probable cause for arrest defeats claims for false arrest and imprisonment. *See id.*; *Gabrou v May Dep't Stores Co.*, 462 A.2d 1102, 1104 (D.C. 1983) (per curiam).

Congress authorized the Secretary of Veterans Affairs to "prescribe regulations to provide for the maintenance of law and order and the protection of persons and property on [VA] property."  38 U.S.C. § 901 (a)(1).  Violations of such regulations may be punished by fines or imprisonment for not more than six months, or both. *Id.* § 901 (c).  One such regulation, codified at 38 C.F.R. § 1.218, establishes the rules of conduct "at all property under the charge and control of [the] VA." *Id.* § 1.218(a).  Under § 1.218(a)(5), all persons on VA property are barred from (among other things) engaging in conduct "which creates loud or unusual noise . . . which otherwise impedes or disrupts the performance of official duties . . . [and] which prevents one from obtaining medical or other services." *Id.*  A disturbance can also include the "[f]ailure to leave the premises when so ordered," whereupon "the offender is subject to arrest and removal from the premises." *Id.*; *see also*

---

[2] "In the District of Columbia, the torts of false arrest and false imprisonment are indistinguishable." *Joyce v. United States*, 795 F. Supp. 1, 4 (D.D.C. 1992), *aff'd*, 986 F.2d 546 (D.C. Cir. 1993) (unpublished) (citing *Shaw v. May Dep't Stores Co.*, 268 A.2d 607 (D.C. App. 1970)).

*id.* § 1.218(b)(11) (specifying schedule of offenses for disorderly conduct punishable pursuant to paragraph (a)).[3]

This regulation has been read to include causing a commotion that drew VA employees away from their ordinary duties, *United States v. Agront*, No. 13-10218, 2014 WL 6600419, at *6 (9th Cir. Nov. 21, 2014), and that "tended to 'impede or prevent the normal operation of a service'" at a VA facility. *United States v. Encinger*, 4:10CR3027, 2010 WL 2771884, at *4 (D. Neb. Jul. 13, 2010) (quoting 38 C.F.R. § 1.218(11)); *see also United States v. Shepard*, 362 F. App'x 107, 112 (11th Cir. 2010) (unpublished).

Harris emphasizes that there is a factual dispute over who ordered Harris not to reenter the group therapy room—he says it was Sheets while the district court stated it was the police. Appellant Br. at 10. But the dispute is of no moment. Undisputed evidence suffices to establish probable cause. In his amended complaint, Harris concedes that Sheets expelled him from group therapy and told the police that Harris caused a "disturbance" and "could not return to [the] group or continue treatment." Harris states that he acted calmly, that he "did not refuse to leave the [group therapy] room," and that he "never attempted to forcefully reenter the [group therapy] room and never disobeyed a police officer's statement." But Harris acknowledges that even after Sheets asked him to leave group

---

[3] Harris was cited only for a violation of the portion of the regulation that lists the schedule of offenses. 38 C.F.R. § 1.218(b)(11). We note, as have other courts, that a violation of § 1.218(b)(11) is tantamount to a violation of the offenses prohibited by § 1.218(a)(5). *See United States v. Dyers*, No. 1:06-MJ-455-AJB, 2007 WL 397109, at *1-2 (N.D. Ga. Jan. 30, 2007); *United States v. Fentress*, 241 F. Supp. 2d 526, 529 (D. Md. 2003), *aff'd*, 69 F. App'x 643 (4th Cir. 2003).

therapy, he remained in the room and only left when Sheets returned with three VA police officers, and, once outside the room, he attempted to reenter, whether "forcefully" or not.

Taken together, these undisputed facts were sufficient to justify arrest. Sheets had ordered Harris to leave group therapy, and the police observed Harris' failure to comply when they entered the room. "Failure to leave the premises when so ordered constitute[d] a [ ] disturbance" that subjected Harris "to arrest and removal from the premises" under VA regulations. 38 C.F.R. § 1.218(a)(5). Sheets also interrupted the therapy session he was running to address Harris' alleged "disturbance." Conduct that "tend[s] to disturb the routine operations of a VA hospital . . . is prohibited" under § 1.218(b)(11). *Fentress*, 241 F. Supp. 2d at 530 (quoting *United States v. Williams*, 892 F.2d 1044, at *2 (6th Cir. 1990) (per curiam) (unpublished)); *see also Agront*, 2014 WL 6600419, at *7.

Although Harris was charged only with "[d]isorderly [c]onduct which creates loud, boisterous, unusual noise," J.A. 55, under 38 C.F.R. § 1.218(b)(11), probable cause may exist "to arrest for any offense, even if it differs from the offense for which the arrest was actually made." *Enders v. District of Columbia*, 4 A.3d 457, 469 (D.C. 2010). The undisputed evidence in this case revealed the probability of several offenses: failing to leave the premises after being so ordered, distracting a VA employee (Sheets), and inhibiting medical treatment (group therapy). *See United States v. Prandy-Binett*, 995 F.2d 1069, 1073-74 (D.C. Cir. 1993).

The evidence may have been insufficient to convict Harris, but the only question before us is whether the police had probable cause to arrest him, which the undisputed facts show that they did. Accordingly, we affirm the grant of summary judgment as to this claim.

2.  Assault and Battery

An assault is an intentional attempt or threat to do physical harm to another.  A battery is an intentional act that causes harmful or offensive bodily contact.  *See Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007).  The police have a qualified privilege to commit both torts when using "reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary."  *Arrington*, 473 F.3d at 335 (quoting *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993)).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014).  Accordingly, "a defendant's motion for summary judgment is to be denied only when . . . a reasonable jury could conclude that the excessiveness of the force is so apparent that no reasonable officer could have believed in the lawfulness of his actions."  *Wardlaw v. Pickett*, 1 F.3d 1297, 1303 (D.C. Cir. 1993).

The district court concluded that "there is no basis for a trier of fact to conclude that the officers used excessive force in executing the lawful arrest of [Harris]."  But this conclusion overlooks genuine issues of material fact about what occurred during Harris' arrest, issues brought to the district court's attention with reasonable specificity in Harris' Statement of Material Facts in Dispute.  *See Frito-Lay*, 863 F.2d at 1033-34.

Sheets stated that during Harris' confrontation with the officers outside of the therapy room, Harris became "verbally and emotionally out of control, resisting compliance."  Harris then "appeared to attack one officer and was then taken to the ground and handcuffed by the police.  He did not appear to be

injured but he did appear to be a danger to others." The Uniform Offense Report filed the day of the incident and signed by one of the responding officers, Donald Christmas, describes how Harris "refuse[d] to comply" with the officers and "went towards LT. NESBIT [sic] and [sic] an aggressive way and got combatant [sic] with police officers," whereupon "he was then taken to the ground and put into restraints." However, the Use of Force Report Event Record that Nesbitt filed the day of the incident makes no mention of Harris coming toward him. It reported only that Harris "failed to comply with the police officers['] directives . . . became distributive [sic] and tried to enter a group session room forcefully," whereupon he "was taken down to the floor[,] [h]andcuffed[,] and escorted to the ER for treatment for difficulty breathing."

In a declaration Nesbitt executed in May 2012, he states that Harris "failed to comply with police directives and attempted to enter a room forcefully. I then assisted with a take-down and restraint." This declaration makes no mention of Harris' difficulty breathing.

Gentry's contemporaneous Use of Force Event Record states that Harris "failed to comply with directives, [and] he tried to enter a room forcefully," and that Gentry "assisted Cpl. Christmas and Lt. Nesbitt with a takedown to restrain and escort." Her later declaration relates essentially the same sequence of events.

Christmas' handwritten Use of Force Report states that Christmas "grab[b]ed [Harris'] left hand and put him in a[n] arm lock back down w[h]ere he then was put in restraint[s] and escorted to the E.R." Christmas' declaration repeats the declarations of the other officers, stating: "Harris failed to comply with police directives and attempted to enter a room forcefully. I then assisted with a take-down and restraint and,

along with Sergeant Gentry, I escorted Mr. Harris to the [VA Medical Center] Emergency Department."

Harris has a quite different story. His affidavit states that he acted and spoke calmly, "never attempted to forcefully reenter the room and never disobeyed a police officer's statement." But, according to Harris' Statement of Material Facts in Dispute, "[r]egardless, the VA police officers forcefully threw [Harris] to the ground, placed him in a lock, and handcuffed him." Corporal Christmas "punched [him] in the rib after he was . . . handcuffed." Harris claims his physical injuries included "a fractured rib, scrapes to his forehead and left hand, ongoing neuropathy in his left fingers, [ ] bursitis in his left and right arms," and increased PTSD-related disability. Harris' medical records show that he complained of pain to his chest immediately after being brought to the emergency department and that he returned to the hospital two days after the incident complaining of sharp chest pain and was diagnosed with a rib fracture.

Whether the police officers' use of force in restraining Harris was reasonable turns on contested questions of fact—including whether Harris was "actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396, whether he "pose[d] an immediate threat to the safety of the officers or others," *id.*, and whether the police struck him after he was in restraints, *see Arrington*, 473 F.3d at 336-37; *Tafler v. District of Columbia*, 539 F. Supp. 2d 385, 390-91 (D.D.C. 2008); *see also DeGraff v. District of Columbia*, 120 F.3d 298, 302 (D.C. Cir. 1997).

"[A] plaintiff may defeat a summary judgment granted to a defendant if the parties' sworn statements are materially

different." *Arrington*, 473 F.3d at 337.[4]  Here, the affidavits, declarations, pleadings, and other evidence show that there are factual disputes that could affect the outcome of the suit.  *See Anderson*, 477 U.S. at 247-49.  First, it is disputed what happened immediately before Harris was taken to the ground and handcuffed.  Sheets and the Uniform Offense Report state that Harris "attack[ed]" one of the officers, but Nesbitt, Gentry, and Christmas state only that Harris attempted to enter the room "forcefully."  Harris claims that he calmly turned to reenter the room to collect his belongings.  Second, it is disputed whether Harris was struck in the chest during the arrest, as he claims and as Nesbitt's contemporaneous Use of Force Report Event Record (which said Harris had trouble breathing) could suggest.  Third, it is disputed whether Harris' rib was fractured as a result of the arrest, as he claims and as the doctor's reports could suggest.  Fourth, it is disputed whether Harris suffered permanent nerve damage as a result of the arrest, as he claims, but as some medical documentation disputes.  Fifth, it is disputed whether Harris' arrest contributed to an increase in his PTSD disability rating, as he claims, or if it merely correlated with it, as a declaration from a VA Service Center Manager states.

---

[4] The VA argues that we should not rely on *Arrington* for the proposition that a plaintiff's sworn statement, contradicting the defendant's version of the facts, is sufficient to create a genuine issue in dispute, because "unlike Arrington, Harris' affidavit appears to contradict his own complaints and the authrotiative [sic] medical evidence."  Appellee Br. at 17 n.2.

The VA has misread the sealed medical records.  The VA writes in its brief that Harris did not complain of rib pain resulting from the incident "until over a year later."  *Id.* at 17.  That statement is not accurate.  Harris' statements and the medical evidence are not contradictory.

Weighing credibility, resolving factual disputes, and drawing legitimate inferences are matters for the fact-finder; thus, summary judgment is inappropriate. *See Pardo-Kronemann v. Donovan*, 601 F.3d 599, 604 (D.C. Cir. 2010). Accordingly, we reverse the grant of summary judgment on Harris' assault and battery claim.

3. Negligence

Harris' third claim is for negligence. He claims that Sheets had a duty to treat him "in a manner that was sensitive to his victimization" and that "Sheets became mean spirited and vindictive," caused the confrontation with police, and, consequently, caused "unnecessary harm to Harris." The district court held that no reasonable jury could find that the arresting officers acted negligently. Because Harris advanced no argument in his brief before us about why the district court erred, we do not consider this claim. *See U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004). We therefore affirm the district court's grant of summary judgment on Harris' negligence claim.

4. Negligent Infliction of Emotional Distress

To make out a claim for negligent infliction of emotional distress, a plaintiff must show that "(1) the plaintiff was in the zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for his own safety, and (4) the emotional distress so caused was serious and verifiable." *Rice v. District of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C. 2011).

Harris argues that "Sheets was entrusted with the care of Veterans who were significantly mentally and emotionally ill," and that "he knew there was no basis to arrest Harris" but

"called security . . . and recklessly caused them to become involved in the unnecessary arrest and detention thereby breaching his duty to Harris." Harris concludes: "As a direct and proximate result of the intentional and wrongful actions of [Sheets], [Harris] suffered physical harm, emotional distress and mental anguish."

The district court did not directly address the negligent infliction of emotional distress claim; instead, the court considered it with the claim of intentional infliction of emotional distress, concluding that both claims failed because the VA police arrested Harris with probable cause and reasonably necessary force.

We affirm the grant of summary judgment on the negligent infliction of emotional distress claim without reaching its merits because Harris did not properly plead the claim in his amended complaint. Harris describes Sheets' actions as knowing and "intentional," and "[i]ntent and negligence are regarded as mutually exclusive grounds for liability." *District of Columbia v. Chinn*, 839 A.2d 701, 706 (D.C. 2003) (internal quotation marks and citation omitted); *see also* DAN B. DOBBS ET AL., THE LAW OF TORTS § 31 (2d ed. 2011) ("Any given act may be intentional or it may be negligent, but it cannot be both."). Merely using the term negligence does "not raise a cognizable claim of negligence." *Chinn*, 839 A.2d at 708. Here, as in *Rice*, Harris "fail[ed] to distinguish the bases for [his] claims." *Rice*, 774 F. Supp. 2d at 33. Because the amended complaint "does not distinguish between negligent and intentional acts, does not identify any specific act that was allegedly negligent, and fails to make out a claim of negligent infliction of emotional distress," *id.* at 33-34, we affirm the district court's grant of summary judgment on this claim.

5. Intentional Infliction of Emotional Distress

To make out a claim for intentional infliction of emotional distress, Harris "must show that the [VA] acted in an (1) extreme and outrageous manner (2) which was intentionally or recklessly calculated to cause [Harris] (3) severe emotional distress." *Joyce*, 795 F. Supp. at 5 (citing *Green v. Am. Broad. Co.*, 647 F. Supp. 1359, 1362 (D.D.C. 1986)). Generally, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Abourezk v. N.Y. Airlines, Inc.*, 895 F.2d 1456, 1459 (D.C. Cir. 1990) (quoting *Sere v. Grp. Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982)) (alteration in original); *see also* RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965).

In his amended complaint, Harris alleged that Sheets "acted in a manner that he hoped would cause intentional harm to [Harris], including physical harm." Sheets allegedly "knew or should have known that his calling of security and excluding [Harris] from the class would result in further emotional and mental harm to [Harris]," and, as a result of Sheets' "intentional and wrongful actions [Harris] suffered physical harm, emotional distress and mental anguish." In his opposition to the VA's motion for summary judgment, Harris stated that he based his intentional infliction of emotional distress claim on both the VA officers' alleged use of excessive force and the allegedly unjustified arrest. He distinguished his case from *Gabrou v. May Department Stores*, 462 A.2d at 1102, on which the VA's motion for summary judgment relied, by noting that the plaintiff in *Gabrou* failed to plead assault and battery in his complaint, whereas "Harris's claim of excessive force is at the heart of his Amended Complaint and is sufficiently pled with facts that support his claim." He argues that the fact that he was "arrested, beaten, and brutalized could result in a jury concluding that the officers' behavior was 'outrageous,'" and, thus, his claim for

intentional infliction of emotional distress should survive summary judgment.

As an initial matter, while Harris describes Sheets' actions in his amended complaint, the VA is the defendant and its agents (the police officers) allegedly committed the assault and battery. As the VA concedes in its papers before the district court and as the district court recognized in its decision, the issue here is whether the officers' actions constituted intentional infliction of emotional distress. The VA, through the doctrine of *respondeat superior*, would be liable for torts committed by the VA police officers acting in their scope of employment. *See Holder v. District of Columbia*, 700 A.2d 738, 741-42 (D.C. 1997). Accordingly, like the district court, we construe Harris' claim as against the defendant, the VA, and not Sheets.

As discussed, we hold that the VA had probable cause to arrest Harris. To the extent that Harris' claim of intentional infliction of emotional distress arises from the mere fact of his arrest, we agree with the district court that the probable cause for arrest defeats those claims. *See Joyce*, 795 F. Supp. at 5. But insofar as Harris' emotional distress claim relates to his assault and battery claim (and to the underlying allegations of excessive force), we reverse.

The district court predicated its ruling on the basis that Harris' arrest was effectuated with reasonable force. But that conclusion involves disputed factual issues, such as whether the police struck Harris once he was restrained, fracturing his rib and causing other injuries.

Applying the established three-part standard for intentional infliction of emotional distress, we note, first, that "a serious case of excessive force" can constitute outrageous behavior such that it satisfies a claim of intentional infliction of emotional

distress. *Gabrou*, 462 A.2d at 1105 (internal quotation marks and citation omitted); *see Jackson v. District of Columbia*, 412 A.2d 948, 955 (D.C. 1980); *see also Bender v. City of New York*, 78 F.3d 787, 791 (2d Cir. 1996) (applying New York law); *Robins v. Harum*, 773 F.2d 1004, 1011 (9th Cir. 1985) (applying Washington state law).

Second, the requisite intent of the defendant can be "inferred, either from the very outrageousness of the defendant's acts or . . . when the circumstances are such that 'any reasonable person would have known that (emotional distress and physical harm) would result.'" *Waldon v. Covington*, 415 A.2d 1070, 1077 (D.C. 1980) (citation omitted); *see also Kotsch v. District of Columbia*, 924 A.2d 1040, 1046 (D.C. 2007). Such an inquiry "is normally a factual question for the jury." *Ross v. DynCorp*, 362 F. Supp. 2d 344, 360 (D.D.C. 2005) (quoting *Waldon*, 415 A.2d at 1078).

Third, with regard to the required showing of severe emotional distress, "[w]hile tort law historically required some physical manifestation or symptom of the alleged emotional distress as a condition for recovery, current D.C. law allows 'an action for intentional infliction [of emotional distress to] be made out even in the absence of physical injury or impact.'" *Id.* at 360-61 (alteration in original) (quoting *Waldon*, 415 A.2d at 1076). Harris states that he "endured multiple hospital visits," "suffered substantial mental and emotional trauma," and "aggravated [his] PTSD" as a result of the incident. The VA contests the degree to which his PTSD worsened and its cause. Harris' alleged injuries, including a fractured rib and worsened PTSD, might suffice to establish severe emotional distress. *See* RESTATEMENT (SECOND) OF TORTS § 46 cmt. k ("Normally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which in itself affords evidence that the distress is genuine and severe."); *see also District of*

*Columbia v. Tulin*, 994 A.2d 788, 801 (D.C. 2010) ("aggravation of a pre-existing depression" could support emotional distress claim).

Given how little is actually established about the VA police's arrest of Harris and its consequences on his health, we reverse the grant of summary judgment on this claim. *See Tulin*, 994 A.2d at 803.

## IV.

We reverse the grant of summary judgment on Harris' assault and battery claim and on his claim of intentional infliction of emotional distress to the extent that it is based on his assault and battery claim. We affirm the grant of summary judgment on all other claims.

*So ordered.*