RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0143p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 18-1107

RAMESS NAKHLEH,

*Defendant-Appellant*.

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-mc-50667-01—Mark A. Goldsmith, District Judge.

Decided and Filed: July 17, 2018

Before: COLE, Chief Judge; SUTTON and LARSEN, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:** Colleen P. Fitzharris, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant. Benjamin C. Coats, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

─────────────────

**OPINION**

─────────────────

COLE, Chief Judge. We have all been frustrated at one time or another by red tape. Fewer of us have grown frustrated because of tape in a more literal sense. But it was tape—or, really, the lack of tape—that sparked the encounter we consider in this matter. Upset by postal employees and their refusal to provide him with tape to seal a box, Ramess Nakhleh engaged in an escalating series of acts that distracted postal workers, interfered in their ability to serve customers, and culminated in an implied bomb threat and the post office's brief closure. In so

doing, Nakhleh violated a regulation prohibiting disturbances in a post office—in particular, a regulation that prohibits "conduct that creates loud and unusual noise" in a post office or that otherwise impedes or disturbs postal operations.  We affirm.

## I.  INTRODUCTION

Nakhleh walked into a Highland Park post office two years ago on a mission that is, at least for now, routine for many of us: he wanted to mail a package.  With his package in hand, he marched to the counter, put his package in a window, and told the postal employee that he wanted to return his box to the sender.  Three problems stood in his way.

The first problem: the package was still open.  After Nakhleh put his box in the window, one postal employee told him that he would have to tape his box closed to send it.  Nakhleh had "tons of tape in [his] house" but did not have tape with him, and the postal employee told him that she could not give him tape for free.  Trial Tr., R. 2, PageID 67.  The post office sold tape, but one of the employees advised Nakhleh that it would be cheaper to buy tape elsewhere.  Heeding this advice, Nakhleh left the post office to buy tape, returned, and after seeking reimbursement for the tape (unsuccessfully), sealed his package.

Solving the first problem, however, gave rise to a second: Nakhleh had lost his shipping label.  A postal worker advised Nakhleh (correctly, it would turn out) to check for the label inside the now-sealed box.  Nakhleh took a moment to accuse the workers of deliberately hiding it, but he eventually accepted the suggestion to look inside the box, where he found the label.

Then came the third problem: Nakhleh refused to touch the label and affix it to the box because, in his words, "it's got pollutant on it."  *Id.* at 34.  One of the postal workers told Nakhleh that they could not accept the package unless he affixed the label to it and resealed it, but he still refused.  Another customer eventually affixed the label and taped the box together.  Nakhleh advised him, "Hey, man, you better wash your hands because it's pollutant on the label." *Id.* at 36.

After all this, the post office processed Nakhleh's package, and Nakhleh left.  He had not gone far, though, when he decided to return.  Upset—and armed with an audio recorder which he

used to record a portion of his interaction—Nakhleh went back to the window at the counter and asked for his package. When an employee told him that she could not return his package because it had already been processed, Nakhleh became loud and irate. He walked back and forth among the windows at the postal counter, taking photos and asking employees for their names. Because of Nakhleh's behavior, the employees were unable to serve other customers in the post office. One employee, witnessing Nakhleh's "belligerent" behavior, called the police.

Things escalated. When the police arrived and asked Nakhleh what he needed from his package, Nakhleh replied (twice), "What if it's a bomb?" *Id.* at 16. After that statement, the police arrested Nakhleh and evacuated the post office. The post office was closed to customers for two hours while a Postal Inspector examined the package and concluded it did not contain a bomb. That same Inspector interviewed Nakhleh, who acknowledged that he understood the statement "was a bad decision" and said that he made it out of frustration. *Id.* at 63.

Nakhleh was presented with a violation notice charging him with causing a disturbance in a post office, a violation of 39 C.F.R. § 232.1(e) made criminal by 18 U.S.C. § 3061(c)(4)(B). After a one-day bench trial, he was found guilty by a magistrate judge, sentenced to six months' probation with anger management treatment, and fined $1,000. The district court affirmed his conviction and sentence. He now appeals.

## II. ANALYSIS

Measured from the vantage of the post office, Nakhleh made a loud and unusual noise that impeded or disturbed postal operations, and the evidence sufficed to support his conviction. The district court did not err in failing to consider the audio recording.

### A. Nakhleh Made a Loud and Unusual Noise in a Post Office

Nakhleh violated § 232.1(e) when he engaged in "conduct which create[d] loud and unusual noise" in the post office and that interfered with postal operations.

### 1. The Regulation Means "Loud and Unusual" for the Post Office

We agree with the district court that § 232.1(e) prohibits conduct which is "loud and unusual" for the post office, not a particular person (at least so long as the conduct impedes or

disturbs postal operations). Nakhleh would have us read the phrase to mean a noise that is "loud and unusual" for a particular speaker (him), not a noise that is "loud and unusual" for the particular place (the post office). But the regulation's text and structure, not to mention case law interpreting similar provisions, all foreclose Nakhleh's reading.

Start with the text of the regulation, which focuses on conduct that might interfere with the operations of the post office:

> (e) Disturbances. Disorderly conduct, or conduct which creates loud and unusual noise, or which impedes ingress to or egress from post offices, or otherwise obstructs the usual use of entrances, foyers, corridors, offices, elevators, stairways, and parking lots, or which otherwise tends to impede or disturb the public employees in the performance of their duties, or which otherwise impedes or disturbs the general public in transacting business or obtaining the services provided on property, is prohibited.

39 C.F.R. § 232.1(e). The regulation begins with a one-word caption: "Disturbances." "Disturbances" are "a breach of *public* peace"—already a clue that the regulation looks at conduct that might be unsettling to the public at large, rather than conduct that is unsettling for a particular person. *Disturbance*, Oxford English Dictionary (2d ed. 1989). While "not commanding," captions such as this are a "'tool[] available for the resolution of a doubt about the meaning of a statute.'" *Yates v. United States*, 135 S. Ct. 1074, 1083 (2015); *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (citation omitted).

The clauses surrounding "loud and unusual" provide more support. One principle of statutory interpretation is to interpret words by the company they keep, and the parts of the regulation accompanying "loud and unusual noise" all point to a for-the-place, not for-the-person reading. *See Yates*, 135 S. Ct. at 1085. For instance, the regulation starts off with a prohibition against "[d]isorderly conduct," signaling conduct that "[v]iolat[es] public order." *Disorderly*, Oxford English Dictionary (2d ed. 1989). And the other parts of the regulation likewise concern conduct that would interfere with the public's use of the post office. Those parts prohibit impeding access to the post office, impeding the work of public employees, or "otherwise imped[ing] . . . the general public" at the post office. Interpreting "loud and unusual" to mean "loud and unusual" for the post office, not for a person, harmonizes this clause with the other actions that the regulation prohibits.

And even more support: this reading is necessary to give sense to how "loud" and "unusual" are used in other parts of the regulation. Besides prohibiting a "loud and unusual" noise in the post office, the regulation prohibits "conducts which creates loud or unusual noise" in meetings of the Post Office's Board of Governors. 39 C.F.R. § 232.1(n). And that part is aimed at prohibiting conduct that would "disturb" those meetings. *Id.* Yet under Nakhleh's for-the-person reading, the section would permit interruptions from someone already prone to making "loud" noises or engaged in behavior that was "unusual" only to others. Many hecklers might welcome Nakhleh's reading, but adopting it would render this prohibition nonsensical.

If this were not enough, our reading is consistent with how the Supreme Court and one other circuit have read similar provisions. In *Grayned*, the Supreme Court upheld against a vagueness challenge an ordinance that prohibited "the making of any noise or diversion which disturbs or tends to disturb the peace" in a school. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Court concluded that the ordinance was "written specifically for the school context" and "prohibited disturbances are easily measured by their impact on the normal activities of the school." *Id.* at 112. While there are differences in the language of the ordinance in *Grayned* and what we consider here, nothing in *Grayned* evinces any idea that the ordinance should turn on a for-the-person reading of "noise or diversion." The Ninth Circuit considered a statute even closer to the regulation we consider here in *United States v. Agront*, 773 F.3d 192 (9th Cir. 2014). In that case, it read a Veterans-Affairs regulation that prohibited "[d]isorderly conduct which creates loud, boisterous, and unusual noise" to include "conduct that would tend to disturb the normal operation of a [Veterans' Affairs] facility." *Id.* at 196.

Nakhleh all but concedes that these cases support the for-the-place reading. As he puts it, he "does not dispute that factfinders must consider context, including the location where the person made the noise." Reply Br. 5. He seems to argue that considering "how the defendant usually speaks" is necessary to give effect to the whole phrase "loud and unusual." *Id.* Not so. The sound of a box (dropped by a customer) hitting the floor might be "loud," but it would hardly be "unusual" for a place that deals in packages. On the other hand, asking a postal worker to be reimbursed for tape might be "unusual," but it would not be "loud" if spoken in a voice

normal for the post office.  Nothing about the phrase "loud and unusual" requires considering how one particular person usually speaks.

Nor would our reading invite arbitrary and discriminatory enforcement.  "Ordinary people," as the district court put it, "can and do understand what conduct is usual in a post office, and thus also understand what conduct is unusual in a post office."  Order, R. 10, PageID 212.  More is required than a customer's simple expression of frustration to violate the regulation.  That is because the context of the regulation—including its focus on conduct that would "otherwise disturb[] or impede[] the general public or the postal employees in transacting business"—further narrows its scope.  The use of "otherwise" signals that the regulation focuses on conduct that disturbs or impedes postal operations "*another* way."  *Otherwise*, Oxford English Dictionary (3d ed. 2004) (emphasis added); *see also Agront*, 773 F.3d at 198.  If anything, Nakhleh's for-the-person standard would invite arbitrary and discriminatory enforcement.  His reading would make the same conduct unlawful for the soft spoken and lawful for the strident.

Because the regulation is not ambiguous, Nakhleh's constitutional-avoidance and rule-of-lenity arguments are unavailing.  The canon of constitutional avoidance "'has no application in the absence of . . . ambiguity.'"  *Warger v. Shauers*, 135 S. Ct. 521, 529 (2014) (citation omitted).  Not only is the clause unambiguous, but a for-the-place reading—already endorsed by *Grayned*—does not touch on a constitutional issue.  In the same vein, the rule of lenity "applies only when a criminal statute contains a grievous ambiguity or uncertainty, and only if, after seizing everything from which aid can be derived, the Court can make no more than a guess as to what Congress intended."  *Ocasio v. United States*, 136 S. Ct. 1423, 1434 n.8 (2016) (internal quotation marks and citation omitted).  Without an ambiguity, we have no occasion to deploy these tiebreaker canons.

For all his toing and froing about "loud and unusual," Nakhleh has not marshalled a single law, regulation, or case ever adopting his interpretation.  Silence, sometimes, is deafening.  The regulation prohibits conduct that is loud and unusual for the post office, not for a person.

**2.  Sufficient Evidence Supports the Conviction**

The evidence, construed in the light most favorable to the government, sufficed to support Nakhleh's conviction.  The district court found that Nakhleh made a loud and unusual noise and that his conduct impeded both the postal workers in performing their duties and other customers in conducting business in the post office.

Recall that Nakhleh violated the regulation in two ways: (1) while he angrily paced back and forth around the counter, he kept postal workers from serving customers (indeed, his behavior was so erratic that an employee called the police); and (2) his implied bomb threat required the post office to be closed.

On appeal, Nakhleh makes no challenge to the first reason.  As the magistrate judge and district court both found, postal employees testified that Nakhleh was "loud," "irate," and that they could not serve customers while he angrily paced in front of the postal counter and took photos.

The challenge that Nakhleh does make fares no better.  Nakhleh argues only that the police officers and postal workers responded unreasonably to his bomb threat by closing the post office.  But just like a panic is the likely outcome of yelling "fire" in a crowded theatre, the post office's closure was the likely outcome of Nakhleh's bomb threat.  The workers did not know what was in Nakhleh's box, but they knew three other things: (1) Nakhleh had engaged in a series of erratic behaviors, (2) he refused to touch a label that had fallen into his box because it had "pollutant" on it, and (3) he had twice implied that the box contained a bomb ("What if it's a bomb?").  Considering this, the police and postal workers' response was reasonable.

**B.  Nakhleh is not Entitled to Relief for the District Court's Failure to Consider a Contemporaneous Audio Recording**

That leaves one final issue: the district court failed to consider an audio recording taken by Nakhleh that at least partially captured his conduct at the post office.  Even accepting for the sake of argument that the district court should have reviewed this recording, on appeal Nakhleh does not identify how this contemporaneous audio recording may have led to a different result.  While he challenges the magistrate judge's decision to credit the postal workers' testimony over

the audio recording, he does not identify how the audio recording varied from the postal workers' testimony.  Yet we have explained that "we defer to the district court's credibility determinations absent reason to believe that they are clearly erroneous." *United States v. Wright*, 747 F.3d 399, 409 (6th Cir. 2014).  And not only does he not identify any variation between the testimony and the tape, but Nakhleh appears to concede that the audio recording only covered a part of his interactions with the postal workers and that the postal workers' testimony was necessary to fill in the gaps.  Any error, then, is harmless.  *See* Fed. R. Civ. P. 52(a).

## III.  CONCLUSION

We affirm the judgment of the district court.